Long *et al. v.* Doxey.

LONG ET AL. *v.* DOXEY.

NEGLIGENCE.—*Instruction.*—Where a complaint for an injury causing death alleges that the injury resulted from the explosion of a boiler, and charges that the boiler was composed of bad iron, that it was defectively made, and that it was old, decayed, and worn to unfitness for use, it is error to instruct the jury that they must find that the explosion resulted from all these causes, or they must find for the defendant.

EVIDENCE.—It is only necessary for a plaintiff to prove so many of the acts alleged by him as constitute a cause of action.

ALLEGATIONS AND PROOF.—A plaintiff must recover according to the allegations and the proofs, and not according to either alone.

SAME.—*Variance.*—A right to recover on a complaint charging negligence in the use of defective machinery cannot be supported by proof of negligence in employing unskilful men to run the machinery.

PRACTICE.—*Interrogatories to Jury.*—Interrogatories to a jury, not asked in the form contemplated by the statute, should be refused.

From the Madison Circuit Court.

*F. M. Finch, J. A. Finch,* and *J. A. Harrison,* for appellants.

*M. S. Robinson* and *J. W. Lovett,* for appellee.

DOWNEY, J.—Action by Mary Sullivan, now Mary Long, against the appellee.

The complaint charges, that " the defendant was the owner and operating a steam heading factory, the propelling power for the machinery in which said factory being steam, which was generated in a boiler composed of iron; that said boiler was composed of defective and insufficient iron, and other material, and was defectively and insufficiently made and constructed, and was old, decayed, and worn to unfitness for use ; that, on the day last named and on certain days before that day, defendant had notice of the defectiveness and unfitness of said boiler for generating steam for said machinery with safety, and was frequently warned that the same was dangerous, and could not be used with safety ; that with full knowledge of all these facts and of the danger of using said boiler in said factory, the defendant carelessly, and negligent.

VOL. L.—25

of the safety of the persons in his employment in said factory, on the day and year aforesaid, wrongfully and negligently employed one Stephen Sullivan, who was then and there the minor and only son of the plaintiff, and was aged about sixteen years, to work in said factory by the said defendant ; that at the time of said employment, concealing from the plaintiff and from the said Stephen the dangerous condition of said boiler and the dangerous and hazardous character and nature of said employment and of the risk taken therein, and for the purpose of making large profits of said employment, as he did on the labor of said Stephen, put and placed him in, and compelled him to engage in avocations about said factory, where he was exposed to the danger of said boiler explosion, without his knowledge or consent; that, on the day last named, while said machinery was being so run, the said boiler, without any fault on the part of said Stephen, but by reason of the defects therein, exploded, and by said explosion said Stephen was instantly killed, without any fault on his part, and without any unnecessary exposure on his part, or any misconduct whatever ; wherefore plaintiff is injured," etc.

The defendant answered by a general denial.

A trial by jury resulted in a general verdict for the defendant, and answers to interrogatories, as follows :

"1. What was the age of Stephen Sullivan at the time he was killed ?

"Ans. About sixteen years.

"2. What was the value of his services per month at that time ?

"Ans. Sixteen dollars.

"What the next year ?

"Ans. Eighteen dollars.

"What the next year ?

"Ans. Twenty dollars.

"What the next year ?

"Ans. Twenty-two dollars.

"3. Did Stephen Sullivan or his mother know that the boiler was unsafe ?

Long *et al. v.* Doxey.

"Ans. No.

"4. What amount of steam could that boiler of defendant safely carry?

"Ans. About ninety pounds.

"5. What amount of steam did it have to carry to run all the machinery attached to the engine?

"Ans. Eighty pounds.

"7. Did not the defendant have notice from J. B. Anderson that the boiler was not safe, when run with the head of steam his engineers were running it with?

"Ans. Yes."

The foregoing questions were propounded by the plaintiff. The following were asked by the defendant:

"1. When was it that the conversation between Anderson and the defendant concerning the capacity of the boiler took place? Was it before or after the explosion of the boiler?

"Ans. Afterward.

"2. Was not what Anderson said the expression of mere opinion, and without any examination of the boiler to ascertain its capacity?

"Ans. Yes."

A motion for a new trial was made by the plaintiff, which need not be set out at length, and it was overruled by the court, and judgment rendered for the defendant.

The overruling of the motion for a new trial is assigned as error.

Counsel for appellants rely upon errors in giving certain instructions and the refusal to give and modifying certain other instructions, the refusal to allow answers to be made to certain specified questions propounded to witnesses, and refusing to submit to the jury interrogatories asked by the plaintiff.

We will examine these questions in the order named. The plaintiff, as we have seen, bases her right to recover upon the fact that the boiler " was composed of defective and insufficient iron, and other material, and was defectively and insufficiently

made and constructed, and was old, decayed, and worn to unfitness for use."

The objections to instructions given relate to the first nine, being all that were given by the court, on its own motion, except the last two, relating to the form of the verdict. In the first instruction, the court recites the allegations of the complaint. In the second, it is stated that the defendant answers denying the complaint. In the third, the jury are informed of the issue which they have to try; that they must decide it according to the evidence, and if there is a preponderance of the evidence establishing the facts alleged in the complaint, they will find for the plaintiff; but if the facts alleged are not established by such preponderance, it would be their duty to find for the defendant.

The fourth instruction is as follows:

"Was said boiler composed of defective and insufficient iron and other material? Was it defectively and insufficiently made and constructed? Was it old and decayed, and worthless for use? Was the defendant informed, and did he have notice, of such defectiveness and worthlessness of said boiler for generating steam for said machinery with safety, if such defectiveness and worthlessness of said boiler did exist? Did the defendant, on or about the time stated in the complaint, employ the said Stephen Sullivan to perform labor in said steam heading factory? And did said Stephen, while so employed by the defendant, get killed by the explosion of said boiler? Was the said Stephen the son of Mary Sullivan, the plaintiff in this suit? If, from the evidence in this case, you find the above suggested facts against the defendant, and that with a knowledge of such defects in said machinery, said defendant did employ said Stephen Sullivan, and put him at work in said heading factory, and that said Stephen Sullivan, while then in such employment, lost his life and was killed by the explosion of said boiler, which said explosion resulted from the defectiveness of said boiler, you will find for the plaintiff, otherwise you will find for the defendant."

The objection urged against the instruction is, that it requires

the jury to find affirmatively in answer to all the questions suggested by the court before they can find for the plaintiff, and unless they do so must find for the defendant.

Counsel for appellants reason thus:

"To say to the jury that they must find whether the boiler was composed of defective and insufficient iron and other material, and defectively and insufficiently made, and was old, decayed, and worn to unfitness, is to say that they must find every defect charged in the machinery to exist, before the plaintiff can recover. For example, supppose the evidence shows that the defect was the quality of the iron in the boiler (old or new), or in its thickness, for the purpose required. If the iron was proven thin or brittle, would not either defect, if shown, be enough to entitle plaintiffs to recover, as either defect would be sufficient to cause the injury? Must plaintiffs prove both defects to exist, and also prove that the boiler was old and badly made, because the complaint so charges? If a battery is charged to have been made with clubs, knives, stones, fists, feet, and teeth, will not proof that the injury was caused by a blow from a club, or by a stone, in the hands of defendant, be sufficient to convict? Must all the means of injury charged be proved? If the recovery was for the means and not the amount of injury, the charge would be correct. The complaint charges various classes of defects and notice to the defendant. Charge 4 is improper, because, in addition to requiring that all the classes of defects be proved, it also makes it a requisite to recovery by plaintiffs that the defendant have notice, *i. e.*, that he was informed of the existence of every class of defect charged."

It is only necessary for a plaintiff to prove so many of the facts alleged by him as amount to or constitute a cause of action. In this case, various reasons or causes are stated for the explosion of the boiler. 1. It was composed of defective and insufficient iron, etc. 2. It was defectively and insufficiently made and constructed. 3. It was old, decayed, and worn to unfitness for use. The court, in effect, told the jury that they must find that the explosion resulted from all these

causes or reasons, or they must find for the defendant. In this we think the instruction was erroneous.

The seventh instruction was as follows:

" If you believe from the evidence that the explosion of said boiler resulted from the unskilfulness or negligence of the engineer running said engine, you will find for the defendant, as there is no allegation in the complaint of the want of skill or management, in said factory, of the engineer or any other employe in or about said factory, and hence with that question you have nothing to do."

We think there is no objection to this charge. The plaintiff must recover according to the allegations and the proofs, and not according to either alone.

We see no objection to the eighth and ninth instructions given, and do not deem it necessary to set them out.

The first instruction asked by the plaintiff was as follows:

" The plaintiff will be entitled to recover in this case, if the defendant, in the selection of his engine and boiler and the employment of his engineer, failed to use such care as a prudent man should in the selection of an engine and boiler and in the employment of engineers, unless the explosion occurred through some carelessness or negligence of the young man Sullivan, who was killed, or of his mother, or unless he or his mother knew that the engine or boiler was unsafe."

It is clear, we think, that the court committed no error in refusing to give this instruction. There is nothing in the complaint relating to the insufficiency of the engine or want of care in its selection, nor is there anything relating to unskilfulness of the engineer or want of care in his selection by the defendant.

The same objection runs through the other instructions asked by the plaintiff, and it was for this reason that the court modified the instructions given at the instance of the plaintiff.

While one Hackleman was a witness on the stand, this question was asked him, which the court refused to allow him to answer : " What reason did you hear given why Anderson quit the engine?" It was right to refuse to allow the question

to be answered. It was designed to call out mere hearsay, and not what was said by the defendant. The plaintiff also sought to prove how many engineers had been employed upon the engine within a month before the explosion, and why they left, which was also refused. We cannot see the tendency of this offered evidence to show the condition of the boiler, the material point in the case.

The court also refused to allow the plaintiff to ask the defendant, on cross-examination, this question: " Did Mr. Hackleman, the engineer, tell you that he had ever had charge of an engine when you employed him ?" We cannot say that this was an error. The unskilfulness of the engineer was not alleged, as we have already seen. It may not have been a proper question on cross-examination, or it may have been deemed too remote.

The only other question is the refusal of the court to propound certain interrogatories to the jury at the instance of the plaintiff. There was no error in this. The interrogatories were not asked in the form contemplated by the statute. The jury should have been asked to answer them in the event they found a general verdict. 2 G. & H. 205, sec. 336.

The judgment is reversed, with costs, and the cause remanded with instructions to grant a new trial.