The Chicago Drop Forge and Foundry Company

*v.*

Cornelius Van Dam, by next friend, etc.

*Filed at Ottawa March 31, 1894.*

149   337
162   453
149   337
 59a  634
149   337
 63a  170
149   337
 68a  229
149   337
170   524
        149   337
              88a 173
149      337
100a  ²374
149      337
105a  ²266
149      337
203   ³496
149      337
115a  ⁵ 60
115a  ¹542

1.   MASTER AND SERVANT—*duty of master to furnish suitable and safe appliances.* There is an implied contract between an employer and employe that the former will provide the latter with suitable means, appliances and instrumentalities for the performance of the labor required.

2.   Where a master, on being notified by the servant of defects that render the service dangerous, expressly promises to repair the defect, or to do what is equivalent thereto, the servant may continue in the employment for such a period of time as it would be reasonable to allow for the performance of the promise.

3.   SAME—*injuries to servant from defective machinery.* As a general rule, the servant will be regarded as voluntarily incurring the risk resulting from the use of defective machinery, if its defects are as well know to him as to the master. But this rule will not be applied when the master, by urging on the servant, or coercing him into danger, or in some other way, directly contributes to the injury.

4.   In such case, if injury results, the servant may recover, unless the danger is such that no prudent person would continue to perform the service. The servant's knowledge of the defect is not, under such circumstances, conclusive of want of due care on his part, because the promise of the master to remove the danger justifies him in continuing in the service, and relieves him of the charge of negligence. If the master fails to make his assurance good, he is chargeable with a failure to exercise ordinary care. It is, however, a question of fact, for the jury to determine, whether the defect is so serious that a prudent person would not continue in the performance of the required work.

5.   NEGLIGENCE—*exercising due care—age and discretion considered.* In an action by a servant against a master, by a boy between fourteen and fifteen years of age, for a personal injury resulting from the use of defective machinery, the jury will have the right to consider whether, under all the circumstances of the case, the plaintiff was guilty of contributory negligence, or whether the defendant, through its foreman, assumed the responsibility of any accident that might occur. Among the circumstances to be so considered are the age, intelligence and discretion of the plaintiff, and his capacity to understand and appreciate the danger to which he was exposed.

22—149 ILL.

6. If a boy between fourteen and fifteen years of age is responsible for his own negligence, he yet may be so immature and inexperienced that his judgment as to a danger which threatens him will be influenced largely by the conduct, directions and promises of an older person, especially where such person is his employer, having control of his time and labor.

7. INSTRUCTIONS—*directing what the verdict shall be.* Where the evidence given at the trial, with the inferences properly arising therefrom, is not insufficient to support a verdict in the plaintiff's favor, an instruction to the jury to find for the defendant will be properly overruled.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. S. P. McCONNELL, Judge, presiding.

Messrs. GREEN, WILLITS & ROBBINS, for the appellant.

Mr. S. P. DOUTHART, for the appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an action to recover damages for a personal injury. Verdict and judgment in the trial court were in favor of the plaintiff, the appellee here, and said judgment has been affirmed by the Appellate Court, whence the case is brought before us by appeal. It is not claimed by appellant, that any error was committed in the admission or rejection of evidence. No instructions were asked by the plaintiff, and only one instruction was asked by the defendant. That instruction was refused, and its refusal is the sole ground upon which the appellant relies for a reversal. By it the court was asked to instruct the jury "that, under the evidence in this case, the plaintiff cannot recover, and the verdict should be for the defendant."

After a careful examination, we are unable to say, that the evidence, as given at the trial, with all the inferences which the jury could justifiably draw therefrom, was so insufficient to support a verdict for the plaintiff, that the court would

have been authorized in directing a verdict for the defendant. (*Simmons* v. *Chicago & Tomah R. R. Co.* 110 Ill. 340).

On June 25, 1890, when the accident occurred, the plaintiff was a boy, between 14 and 15 years of age, and was then employed by the appellant company, in its drop forge and foundry works in Chicago, where he had been working from the time he was 12 years old. About 9 o'clock on the morning of that day, he was assigned to the task of operating one of a number of large iron hammers, propelled by steam, and weighing 900 pounds. The drop hammer moved up and down between guide-shafts on either side, and, upon its descent, would strike upon an iron base, having an opening for the insertion of dies for shaping iron. On the under side of the hammer was another opening, in which another die for shaping is placed. The drop hammer, when raised above the base, was kept in place by what is called a "dog," "L"-shaped, working on a pivot in one side of the guide-shaft, and catching on a bar that passes through the hammer. A spring lever, in the top of which the outer end of the "dog" is fastened, is attached to the base, and supplied with a treadle. When the operator steps on the treadle, the lever is pulled down, the "dog" is drawn from under the bar, and the hammer falls by its own weight, and strikes the required blow.

Before the injury, appellee had been engaged at another hammer in shaping shears from heated iron, and used tongs to put the iron under the hammer. The evidence, however, tends to show, that he was not familiar with the kind of work done at the machine where he was injured by a fall of the drop-hammer upon his hand, tearing it to pieces and necessitating its amputation. On the morning in question, the foreman of the shop, who had charge of the work, and of the men and boys engaged in it, ordered a boy older and more experienced than appellee, to leave the hammer which caused the injury, and placed appellee there to operate it, so as to shape, from cold iron, buggy clips for the axles to which the thills of

buggies are attached. The boy, removed from the work at that time, was placing the clips under the hammer with his hands. The foreman spent a few moments in showing appellee how to shape the clips, placing two or three of them under the hammer with his hands, and stepping on the treadle, and taking out the clips, when they were shaped, with his hands. He then left appellee and went to another part of the shop. After appellee had worked about 15 minutes, the "dog" slipped off, and let the hammer fall, although the treadle had not been pressed. At this time appellee escaped injury from the hammer thus suddenly and unexpectedly falling. A workman near by, seeing "the hammer slipping off the dog," came forward and warned appellee not to put his hand under the hammer. Appellee then went to the foreman, and informed him that the "dog" was out of order, and did not hold the hammer. The foreman ran the hammer up and down one or more times, and it did not fall. Appellee asked him to have the "dog" fixed, but was told to go on with the work, that they were in a hurry for the clips which had to be shipped away, and that the "dog" would be fixed as soon as the balance of the clips had been shaped. The appellee then asked for a pair of tongs to handle the iron with, so that it would not be necessary for him to put his hands under the hammer. The foreman told him to keep on with his work, and he would get him a pair of tongs. The boy obeyed, and the foreman went away, but brought no tongs. In about 30 minutes the "dog" again slipped from the hammer without pressure on the treadle, while appellee was placing the iron under the hammer and taking out the clips with his hands. The hammer fell suddenly and without warning, and drove the die through the center of one of his hands. The facts thus stated were sworn to by appellee, and in most respects are confirmed by the testimony of other witnesses. In some particulars he is contradicted by some of appellant's witnesses, but it was a matter for the jury to determine whether he or the contradicting witnesses should

be believed. The evidence tended to establish such a state of affairs as is above set forth.

It is proven beyond question, that the "dog" was worn, and so defective that the hammer was liable to slip away from it and fall. It is also shown, that appellant's foreman was notified of this defect and failed to remedy it. There is an · implied contract between the employer and the employe, that the former will provide the latter with suitable means, appliances and instrumentalities for the performance of the labors required. (*Pennsylvania Co.* v. *Lynch,* 90 Ill. 334). It is said, however, that appellee knew of the defective condition of the "dog," and, with such knowledge, continued to expose himself to danger. As a general rule, the servant will be regarded as voluntarily incurring the risk resulting from the use of defective machinery, if its defects are as well known to him as to the master. But this rule will not be applied where the master, by urging on the servant, or coercing him into danger, or in some other way, directly contributes to the injury. (*Penn. Co.* v. *Lynch, supra*).

The boy seems not to have been conscious of the extent of the danger even after the first falling of the drop-hammer, until one of the workmen, older than himself, warned him against it. The foreman, whose business it was to see that the machinery was in proper shape, experimented with the hammer, by causing it to rise and fall in appellee's presence, and succeeded in showing him that, during those experiments at least, the "dog" was sufficient to hold the hammer. He then insisted, that the work in hand should be finished before the "dog" was repaired; and the effect of this conduct of his superior upon the mind of the boy may have been to lead him to the conclusion, that the work could be done before the happening of another accident. In addition to this, when appellee suggested the use of tongs, which would enable him to do the work without putting his hands under the hammer, the fore-

man induced him to proceed with his work upon the promise that he would get the tongs.

The promise here made was not a promise to repair the defective machinery, but it was a promise to furnish an instrument or tool, the use of which would have the same effect as the repairing of the machinery, namely, lessen the danger of accident. Where a master, on being notified by the servant of defects that render the service dangerous, expressly promises to repair the defect, or to do what is equivalent thereto, the servant may continue in the employment for such a period of time as it would be reasonable to allow for the performance of the promise. In such case, if injury results, the servant may recover, unless the danger is such that no prudent person would continue to perform the service. The servant's knowledge of the defect is not, under such circumstances, conclusive of want of due care on his part, because the promise of the master to remove the danger justifies him in continuing in the service, and relieves him of the charge of negligence. If the master fails to make his assurances good, he is chargeable with a failure to exercise ordinary care. It is, however, a question of fact for the jury to determine, whether the defect is so serious, that a prudent person would not continue in the performance of the required work. (*Missouri Furnace Co.* v. *Abend,* 107 Ill. 44; *Hough* v. *Railway Co.* 100 U. S. 213).

We think that, here, the jury had a right to consider whether, under all the circumstances of the case, the plaintiff was guilty of contributory negligence, or whether the defendant, through its foreman, assumed the responsibility of any accident that might occur. Among the circumstances so to be considered were the age, intelligence and discretion of the appellee, and his capacity to understand and appreciate the dangers to which he was exposed. (*Hinckley* v. *Horazdowsky,* 133 Ill. 359; *Chicago Anderson Pressed Brick Co.* v. *Reinneiger,* 140 id. 334; *Herdman-Harrison Milling Co.* v. *Spehr,* 145 id. 329). It is not necessary to decide at what age an

infant's responsibility for negligence may be presumed to commence, whether at the age of fourteen years, or not. If a boy between 14 and 15 years of age is responsible for his own negligence, he yet may be so immature and inexperienced, that his judgment as to a danger, which threatens him, will be influenced largely by the conduct, directions and promises of an older person, especially when such older person is his employer, having control of his time and labor. Hence his youth and inexperience may be taken into consideration by the jury in determining the extent, to which the conduct, directions and promises of his employer may have operated to influence him in deciding whether he should continue in the dangerous employment, or abandon it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*