McFarlan Carriage Co. *v.* Potter.

---

The McFarlan Carriage Company *v.* Potter.

[No. 18,800.   Filed April 20, 1899.   Rehearing denied July 7, 1899.]

Master and Servant.—*Personal Injuries.—Defective Machinery.— Promise to Repair.—Assumption of Risk.*—Where an employe notified employer of defects in tools and machinery, and the employer recognized such defects, and, to avoid an immediate suspension of the work, requested and induced the employe to continue the work by a promise to repair, the employer is charged with an assumption of the extraordinary risk pending the promise to repair. *pp. 111-113.*

Same.—*Personal Injuries.—Defective Machinery.—Promise to Repair. —Complaint.*—A complaint in an action for damages on account of personal injuries sustained from the use of defective machinery containing the allegation that "the defendant promised the plaintiff that it would repair said saw and table as soon as the job of work that said company was then working on was completed," is good as against a demurrer without stating the time required to complete the work.  *pp. 113, 114.*

Same.—*Personal Injuries. —Defective Machinery.—Promise to Repair. —Injury Before Time Promised to Make Repairs.*—Where an employe is induced to continue work upon a promise of the employer to repair defective machinery as soon as the job of work engaged on is completed, the employer is not relieved from liability for an injury sustained by the employe by reason of such defective machinery because the injury was received before the time of the execution of the promise to repair had arrived.  *p. 114.*

Same.—*Personal Injuries.—Defective Machinery.—Promise to Repair. — Complaint.—Proof.*—Where plaintiff in an action for damages on account of personal injuries resulting from the use of defective machinery alleged in his complaint that the saw and table were

defective, and that he was injured thereby after a promise to repair the same had been made, proof that the table only was defective, and that he was injured by reason of the defect in the table, operating solely and independently of the saw, after promise to repair it had been made, and within the limit of the promise, will entitle him to a recovery. *pp. 116-118.*

From the Rush Circuit Court. *Affirmed.*

*W. H. H. Miller, J. B. Elam, McKee, Little & Frost* and *Smith, Cambern & Smith,* for appellant.

*R. Conner, J. M. McIntosh, L. Conner* and *Morris, Innis & Morgan,* for appellee.

HADLEY, J.—Appellee brought this suit to recover damages for injuries received while operating a rip-saw as an employe of appellant. The complaint is in one paragraph and, in substance, charges that the plaintiff, being in the employ of the defendant, by order of defendant, was operating a rip-saw in the defendant's factory; that the table in which said saw was situate, and said saw, at the time the plaintiff received his injuries, were defective and out of repair in the following particulars: (1) That the top of the table should have been level but was not level on account of the floor on which it stood giving away, leaving the top of the table in a slanting position; (2) the slot irons upon the table should have been smooth and even with the top of the table, but had become raised one-fourth of an inch above the top of the table; (3) that said saw should have stood perpendicularly; that it did, in fact, stand one-fourth of an inch out of perpendicular; that the defendant knew said defects existed several days before the injury; that on account of said defects the hazard of operating said saw was greatly increased; that on the 12th day of December, 1895, while operating said saw, by order of defendant, and by and on account of said defects in said saw and table a piece of timber he was then cutting by said saw was caught by said saw in such manner as to turn it over quickly, and, being thus quickly and unexpectedly turned, the hand of the plaintiff was thereby

McFarlan Carriage Co. *v.* Potter.

thrown against the saw and destroyed. "Plaintiff further avers that the defendant from time to time before he received said injuries, promised the plaintiff that it would cause said saw and table to be repaired; that the plaintiff had not been operating said saw for several days prior to the happening of the injuries complained of; that on the morning of said day the defendant promised the plaintiff that it would repair said saw and table as soon as the job of work that said company was then working on was completed, and that the plaintiff, relying upon said promise, by the order of the defendant, commenced to operate said saw, and was injured within two hours thereafter, and before said job of work was completed; that the plaintiff, relying upon said promise to repair said saw and table, and at the request of the defendant, continued to operate the same until he received said injuries, believing that the defendant in pursuance of its promises would repair said defects in said saw and table. The plaintiff further avers that at the time he received said injuries he was operating said saw with due care, and was free from any fault or negligence on his part; that said injury was occasioned wholly by said defects in said saw and table, and the negligence of the defendant."

A demurrer to the complaint was overruled. Trial upon the complaint and general denial and verdict and judgment for $2,000. Error is assigned upon the overruling of the demurrer to the complaint, and the overruling of appellant's motion for a new trial. The point of attack upon the complaint is found in these words: "That the defendant from time to time, before the plaintiff received his injuries, promised the plaintiff that it would cause said saw and table to be repaired; that on the morning of said day the defendant promised the plaintiff that it would repair said saw and table as soon as the job of work that said company was then working on was completed, and that said plaintiff, relying upon said promise, by order of the defendant, commenced to op-

erate said saw, and was injured within two hours thereafter, and before said job of work was completed."

Appellant's learned counsel in their brief forcibly urge that the above averments make the complaint insufficient for three reasons: (1) Because the promise to repair related to patent defects; that is, such as were open and known equally to employer and employe; (2) because the promise to repair was too indefinite and uncertain to justify reliance thereon; (3) because it is shown that the injury was received before the time fixed for performance of the promise to repair. Appellee, with equal vigor, combats each proposition.

There are certain underlying principles about which courts and lawyers are agreed. Among them are: (1) That in establishing the relation of employer and employe certain reciprocal duties are implied, namely: On the part of the employer that he will furnish to the employe reasonably safe instrumentalities and place with which and in which to work; and on the part of the employe that he will render suitable service, and obey the reasonable commands of his employer. (2) That the employe assumes all the known and usual dangers incident to the place and instrumentalities with which he works. Whether these mutual obligations are contractual, or spring from public policy, is not well settled; but that each is held to a strict accountability with respect to these requirements is a rule of universal application. (3) Another familiar rule is that during the employment, if the instrumentalities used get out of repair, either from natural wear, displacement, or breakage, thereby increasing the danger, and the employe knows of the defect, or by the exercise of reasonable caution might have known it, and he goes on without complaint or notice to his employer, he will be held to have assumed the augmented peril. This latter rule rests upon the principle that while it is the duty of the employer to furnish reasonably safe machinery, and to make reasonable inspections for the discovery of defects; yet, it is equally the duty of the employe to be vigilant for his own

McFarlan Carriage Co. *v.* Potter.

safety, and if he carelessly overlooks, or silently acquiesces in a dangerous situation that results in his injury, the fault is laid at his door, and he cannot recover therefor.

Upon the general rule of assumption of risk by an employe, who, with notice, continues in the service, the courts have humanely and justly engrafted an exception that is now as well established as the rule itself. The exception arises when in the course of the employment the employe discovers that the machine or implement with which he is required to work has become defective, and more dangerous, and, upon his notice to the employer, the latter promises to make needed repairs. The exception is nowhere denied, but in its application there is some divergence. The doctrine of one class of instances is stated by Wharton as follows: "The only ground on which the exception before us can be justified is, that in the ordinary course of events the employe, supposing the employer has righted matters, goes on with his work without noticing the continuance of the defect. But this reasoning does not apply, as we have seen, to cases where the employe sees that the defect has not been remedied, and yet intelligently and deliberately continues to expose himself to it." Wharton's Negligence (2nd ed.), §220. Or, in other words, that the exception prevails in cases where the defect promised to be repaired is latent, and does not prevail where it is patent.

Appellant earnestly insists that the ground here stated is the only rational and defensible basis for the exception, and that the complaint is bad for disclosing that the defects in the saw and table were clearly obvious; and the resumption of work by appellee, being an adult, and familiar with the saw, and the dangers likely to result from the situation, even after the promise of repairs when the job was completed, constituted contributory negligence. We are not able to yield our assent to the limitation of the exception thus contended for, nor do we believe that this limitation supplies the only rational and defensible ground for the exception. As we have

seen, in a general employment, the implied undertaking on the part of the employer is that he will furnish the employe with a reasonably safe place and appliances with which to work; and on the part of the employe that he will assume the risk of all ordinary and usual dangers incident to the use of such instrumentalities as are furnished him by his employer. Springing from the relation is also the equally incumbent duty on the part of the employer to be vigilant for the safety of his employe and to make reasonable inspection for the discovery of defects in the machinery used. Within the chosen sphere of mutual duty, during the progress of the employment, both employer and employe must be diligent, and coöperate to secure the employe against personal injury,— the employe to protect himself against all known and obvious dangers, and the employer to see to it that the instrumentalities furnished by him are reasonably safe, and free from lurking and unexpected peril. The failure to perform this reciprocal duty is negligence. Another kindred rule promotive of safety to the employe requires the employer, upon learning of any latent peril or defect in the place or appliances, promptly to notify the employe, that he may be on his special guard to avoid it. It is likewise the duty of the employe, upon learning of any such defect, promptly to notify his employer, that the latter may right himself by restoring the impaired machinery to the standard of his duty. And it is immaterial whether the defect of which the employe complains be latent or obvious, for after discovery the latent defect is as fully known to him as is the open one. If the employe has knowledge of the impairment of the place or machinery, so that danger is thereby increased, and he goes on without complaint or notice to his employer, he will, from his silence and want of diligence be held to have assumed the augmented peril however great, and if injured thereby is entitled to no relief. In such case the employe is the party at fault, and must take the consequences. When, however, the employe, in the line of duty, conveys to the

McFarlan Carriage Co. v. Potter.

employer notice that an impairment of the instrumentalities furnished him to work with has passed the stage of reasonable safety, and has increased the hazards of the employment beyond the limit of the risk assumed, and the employer, recognizing his default, to avoid an immediate suspension of work, requests and induces the employe to go on, by a promise to repair, then the law charges the former with an assumption of the extraordinary risk pending his promise to repair. At this point the parties are no longer upon equal footing. The servant is without fault, and pursues the work with greater peril to himself than the relation requires, while the master, who is in default, requests and induces a temporary suspension of his duty, a transient indulgence of his negligence, for his own pleasure or beneficial purpose.

A promise to repair is confession to a breach of duty, and when a master, to right himself, requests and induces a postponement, either for convenience or profit, no principle of justice will lay the burden of delay upon the unoffending servant. The whole question is bottomed upon the wrong of the master, and it is sophistry to argue that the servant, by confiding in the master's promise, for a reasonable time in which to cure the defects, clearly obvious though they be, should be chargeable with having waived the master's duty to him, and assumed the additional risk himself. To this statement, however, it should be added that, the employer's assumption of liability for injuries resulting from the increased risk does not extend to promises to repair or replace such simple implements as ladders, hoes, hand-saws, and the like. *Meador* v. *Lake Shore, etc., R. Co.*, 138 Ind. 290.

Second, it is insisted that the complaint is bad for disclosing that the promise to repair was too uncertain and indefinite as to time of performance to warrant a reliance upon it. The allegation is that "the defendant promised the plaintiff that it would repair said saw and table as soon as the job of work that said company was then working on was completed." It

is true we are not informed whether completion would "take a day, thirty days, or six months," but we must confine ourselves to a reasonable view, and presume that both parties knew the time necessary, and that the promise was made and acted upon with special reference to the time required. At any rate, the promise to repair is distinctly averred, and if the time of performance was not satisfactorily shown, the defendant had its remedy by motion. It is sufficient to withstand a demurrer.

Third, it is also insisted that the complaint is bad because it shows that the plaintiff's injury was received before the job was completed, and before the time for execution of the promise had arrived, the insistence being that the promise to repair, as made, did not begin to operate until the job was completed, and that the shielding period was the reasonable time the plaintiff might rely upon the performance of the promise after the completion of the job. We cannot approve this view. We perceive no sound reason, and none has been suggested, for holding that such a promise has no force till the time arrives for its execution, and that it does not become effective until after it is broken. It is clear, and the view has the support of an overwhelming weight of authority, that a promise to repair is at its best the moment it is made and acted upon.

The law governing the foregoing points made on the sufficiency of the complaint is for most part clearly and succinctly stated in the following approved language: "A servant who learns of defects in machinery about which he is employed, and gives notice thereof, but is induced to remain in the service by a promise of the master to remedy the defect, may recover for an injury caused thereby, where it occurs within such time after the promise as would be reasonably allowed for its performance, and where it is not so imminently dangerous that a man of ordinary prudence would refuse to work about it." As sustaining these views, in several jurisdictions, see: *Greene* v. *Minneapolis, etc., R.*

*Co.*, 31 Minn. 248, 17 N. W. 378, 47 Am. Rep. 785; *Eureka Co.* v. *Bass*, 81 Ala. 200, 8 South., 216, 60 Am. Rep. 152; *Noe Roux* v. *Blodgett, etc., Co.*, 85 Mich. 519, 48 N. W. 1092; *Patterson* v. *Pittsburgh, etc., R. Co.*, 76 Pa. St. 389; *Graham* v. *Newburg, etc., Co.*, 38 W. Va. 273, 18 S. E. 584; *Chicago, etc., Co.* v. *Van Dam*, 149 Ill. 337, 36 N. E. 1024; *Hough* v. *Texas, etc., R. Co.*, 100 U. S. 213; Shearman & Redfield Neg. §215; Cooley on Torts, §559; *Laning* v. *New York, etc., R. Co.*, 49 N. Y. 521.

In the first case above cited, the court says: "Neither is there any warrant for the suggestion that the doctrine of these cases only applies where the servant, in reliance upon the promise, continues in the service, supposing that the defects had been already remedied. The statement to that effect in Wharton on Negligence, §221, finds no support whatever in the authorities." Further on in the same opinion the court adds: "But it is now almost equally well settled that if a servant, who has knowledge of defects in the instrumentalities furnished for his use, gives notice thereof to his employer, who thereupon promises they shall be remedied, the servant may recover for an injury caused thereby, at least when the master requested him to continue his service, and the injury occurred *within the time* at which the defects were promised to be remedied."

In *Eureka Co.* v. *Bass, supra*, it is said: "We have said that the carrying of the risk by the employer will be implied to continue only for a reasonable time after the making of the promise by him to remove the danger producing it. The injury, in other words, *must have occurred within the time* at which the defects were promised to be removed." We therefore hold that the complaint states a good cause of action, and appellant's demurrer thereto was properly overruled.

The case of *Standard Oil Co.* v. *Helmick*, 148 Ind. 457, is urged upon our consideration as holding a contrary view. It should be noted that the question in that case related to

the use of an ordinary crank, applied in the usual way to a square shank on the end of a shaft which revolved a machine in the occasional discharge of candles. The defect complained of was the worn condition of the shank, which had been brought about gradually by friction in the use of the crank. The plaintiff put on the crank, and, while engaged in turning the machine, the crank slipped off, and precipitated him against a platform, whereby he was injured. The court assigned the Helmick case to that class to which *Meador* v. *Lake Shore, etc., R. Co.*, 138 Ind. 290; *Jenney, etc., Co.* v. *Murphy*, 115 Ind. 566, and *Marsh* v. *Chickering*, 101 N. Y. 396, 5 N. E. 56, belong, which hold that in the use of simple implements and devices a promise to repair is not available as a defense. What was there said, contrary to the view herein expressed, was unnecessary to a decision of the case, and cannot be accepted as authority in the case at bar. Some expressions in *Burns* v. *Windfall Mfg. Co.*, 146 Ind. 261, and probably other of our cases may appear in conflict, but we are satisfied that the better reasons and a decided weight of authority support the law as above stated.

Appellant urges that its motion for a new trial should have been granted for failure of proof to sustain the complaint, the claim being that the complaint rests upon the promise to repair alleged defects in the saw and table whereby appellee was injured; that is, that the injury resulted from the joint agency of the defective saw and table, and that the evidence shows that the promise to repair was confined to the table. In support of his claim appellant relies upon *Terre Haute, etc., R. Co.* v. *McCorkle*, 140 Ind. 613. But are the facts of that case of a character to bring this case within the rule there announced? The plaintiff was injured in an attempt to couple cars. The coupling device was defective, broken, and a part of it gone, and, on account thereof, the cars in colliding were much closer together than they would have been with the coupling in proper condition. The danger in attempting the coupling was largely increased,

apparent and known to the plaintiff. On the outside lower corner of the car, at the end where the coupling was to be made, the stirrup used in ascending the car was broken and bent forward eight or ten inches. The plaintiff, intent upon avoiding the great danger in making the coupling, cautiously raised and held the link till the moving car carried the draw bar to its place, then sprang outward to escape being crushed, and, as he passed outward, his leg was caught by the defective and protruding stirrup, thrown off his balance, and injured. The complaint charges that the injury resulted from the joint agencies of the two defective parts, namely: the coupling device and the stirrup; and the court, in charging the jury, informed them that the plaintiff should recover if he had proved "that the car was defective in *one* or the *other* of the particulars   *   *   *   and proved that one or the other of such defects, or both operating conjointly, produced the injury." It was held that, under the complaint and facts proved, it was error to charge that the plaintiff was entitled to recover if he proved that the car was defective in *"one* or the *other"* particulars complained of, and that he was injured thereby. The decision was undoubtedly right upon the facts charged and proved. It was averred that the injury resulted from both agencies operating together, and the evidence fully sustained the averment. If the defective stirrup had been absent, the plaintiff might have operated the defective coupling device, and sprung away without injury; or, if the coupling device had been in proper condition, and would have stood the cars apart for a safe distance, and permitted the coupling with such deliberation as would not have required springing outward, then the stirrup might have been successfully avoided. In that case it was the two defects, existing and operating together, that produced the injury. If either defect had been absent, the injury would not have happened.

In this case it is alleged, in substance, that the floor had sunk, and carried with it one side of the table, and the table

had carried with it the saw adjusted thereon until the saw stood a fourth of an inch from a perpendicular line. No defect is charged to exist in the journals or bearings of the saw, and, if they were in proper condition, the saw would and did follow the slope of the table to which it was fastened; and if the slot irons had been level with the top of the table, as they should have been, to permit the smooth and unob- structed passage of the board, there could exist no reason or cause for the injury in the manner alleged. It is not neces- sary that a plaintiff shall prove all the facts he has averred. It is sufficient if he proves enough of them to constitute a cause of action. In this case it is alleged that the "saw and table" were defective, and that the plaintiff was injured thereby after a promise to repair the same had been made. If the plaintiff was successful in proving that the table only was defective, and that he was injured by reason of the de- fect in the table, operating solely and independently of the saw, after promise to repair it had been made, and within the limit of the promise, he is entitled to recover. *Long* v. *Doxey*, 50 Ind. 385.

The evidence shows that the slot irons had become loos- ened and raised a fourth of an inch above the top of the table, and sloped outward from the saw, making the space between the iron and the saw wider at the top than at the bottom, a condition that could not have been effected by the incline of the saw, it being at right angles with the table; and that it was by a piece of timber, passing in at the top of the slot, and being carried and pressed by the saw quickly downward, that caused the timber to turn suddenly and throw appellee's hand against the saw. The evidence also tends to prove that appellant promised to repair the table by reducing and fastening the slot iron in its proper place as soon as the job was completed. The facts, we think, bring the case within the rule of *Long* v. *Doxey*, *supra*, and are sufficient to sup- port the complaint.

Wabash R. Co. *v.* Kelley.

Appellant also complains of instructions number ten and eleven given by the court. The substance of each is to the effect that if the plaintiff was induced to continue in the use of the saw by the promise of the defendant to repair the same, the plaintiff was excused if he used care reasonably commensurate with the increased danger; and, if injured without any fault on his part, and within the limits of the promise to repair, he is entitled to recover, provided the danger was not so great that a reasonably prudent man would not have encountered it. We think the instructions were proper under the law as we have found it to be. Complaint is also made of the refusal of the court to give an instruction based on the Wharton rule, *supra*, which we have found is not the law. Complaint is also made of another refusal based on the case of *Meador* v. *Lake Shore, etc., R. Co.*, 138 Ind. 290, relating to the defective slot, but all that was requested, that was pertinent to the complaint and evidence, we think was fully covered by instructions given by the court.

This case was transferred to this court by the Appellate Court under §1362 Burns 1894. We find no error in the record. Judgment affirmed.