NOE ROUX v. THE BLODGETT & DAVIS LUMBER COMPANY.

*Master and servant—Defective appliances—Promise to repair— Assumption of risk—Contributory negligence.*

1. If a servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good; which assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume its risks. Cooley, Torts, 559; *Lyttle v. Railway Co.*, 84 Mich. 289 (head-note 2).

2. Where in a negligence case there is a chance, upon the facts shown, for ordinarily candid and intelligent men to arrive at different conclusions, the question of contributory negligence is to be determined by the jury.[1]

Error to Menominee. (Grant, J.) Argued April 9, 1891. Decided May 8, 1891.

Negligence case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*B. J. Brown* (*H. O. Fairchild*, of counsel), for appellant.

*Sawyer & Waite*, for defendant.

[The points of counsel are stated in the opinion, in which the authorities are reviewed.—REPORTER.]

McGRATH, J. This was case for negligence. The court

[1] See *Flater v. Fey*, 10 Mich. 644; *Luke v. Mining Co.*, 71 Id. 364; *Adams v. Iron Cliffs Co.*, 78 Id. 271; *Brezee v. Powers*, 80 Id. 172 (head-note 3); *Underhill v. Railway Co.*, 81 Id. 43; *Engel v. Smith*, 82 Id. 1 (head-note 3); *Sadowski v. Michigan Car Co.*, 84 Id. 100 (head-note 1).

below took the case from the jury on the ground that plaintiff was guilty of contributory negligence, and plaintiff appeals.

Roux was employed in defendant's saw-mill, upon the band-saw. It was his duty to take the cants from the saw, and guide them over the rollers, which took them to the gang-saw. The logs were brought to the saw from the north end of the mill, and upon a carriage-way, which extended about 30 feet to the south from the saw. Immediately east of this carriage-way, and running parallel therewith, was a system of rollers upon which the cants fell as they were cut from the logs. The first two rollers were dead, and stood three feet and six feet, respectively, to the south of the saw, and then came an open space of four feet, and then a system of five live rollers, forming a kind of table through which the rollers projected. The power was communicated to these rollers, on the easterly ends thereof, by means of bevel-gear wheels running into each other on the horizontal shaft along-side of the table, several inches below the top of the rollers. This shaft was operated by an upright shaft, coming through the floor from below, on the top of which was a bevel-gear wheel, which worked into a similar one keyed to the horizontal shaft. The head sawyer's place was near the second dead roller, south of the saw, and plaintiff's usual place was in and upon a space between the second dead roller and the first live roller, and his duty was to bring the board or cant down upon the rollers, and guide it upon its journey to the wheel-skids, which carried it to the edger or gang-saw. These wheel-skids were on the easterly side of the rollers. The carriage which brought the logs to the saw passed back and forth with each cut in front of plaintiff, and to the west of the rollers. East of the rollers was an open space, about four feet wide, at the point where the acci-

dent occurred. When the board or cant struck the rollers it would be between plaintiff and the carriage-way.

Up to the day before the accident the gearing referred to had been covered by boards adjusted upon hinges and brackets. This covering had been split up and destroyed by the action of the boards in falling upon it and in being carried along its surface, leaving the gearing exposed; and on the day before the accident plaintiff called the attention of the mill superintendent to this condition of the gearing, and the latter promised to attend to it that night. But when plaintiff went to the mill the next morning nothing had been done, and he again called the superintendent's attention to the exposed and dangerous condition of the gearing, and the superintendent stated that he had not had time, but that he would fix it at noon; directing plaintiff to go to work, but to take care of himself till noon, and that it would then be fixed. At about 10 o'clock of the same day plaintiff had his leg crushed by having his clothing caught, and his leg drawn into the bevel-gear wheels, at the junction of the upright shaft with the horizontal shaft. These wheels moved *towards* each other, while the other wheels on the horizontal shaft at the rollers move *from* each other. When injured, plaintiff was engaged in righting a cant, which was 2 inches thick, somewhere from 12 to 24 inches in width, and about 24 feet long, the southerly end of which had gotten off the rollers and into the carriage-way, and plaintiff was endeavoring from the east side of the rollers to get the plank back upon the rollers. It appeared from the testimony that plaintiff was required to work rapidly; that nothing could be done at the band-saw till this plank was out of the way; that in the mean time three or four men were standing idle; and that the work at the gang-saw depended upon the progress of the work at the band-saw; and that it

was not unusual for cants to require adjustment upon the rollers.

It is urged that plaintiff's knowledge of the exposed and dangerous condition of this gearing was equal to that of his employers, and by continuing his work he assumed the risk. This rule of law is not applicable to the circumstances of the present case. The risk to which plaintiff was exposed on the day of the injury was not one ordinarily incident to his employment. The danger was not one existing at the time of his engagement. It was a temporary peril. It did not arise until the day before the injury. In view of the danger this very machinery had been covered up. Plaintiff, acting as a prudent man should, had, on the evening before, and again on the very morning of the accident, notified defendant of the fact that the gearing was exposed, and defendant had, in recognition of the danger, and of plaintiff's exposure thereto, promised to replace the covering, and instructed the plaintiff to continue his work until noon, when it should be done. There was no voluntary assumption of the risk on the part of the plaintiff. He proceeded under protest. It was defendant's bounden duty, when notified, to re-cover this gearing. It was postponed to suit defendant's convenience, and not that of the plaintiff.

As was said in *Greene v. Railway Co.*, 31 Minn. 248 (17 N. W. Rep. 378):

" If the emergencies of a master's business require him temporarily to use defective machinery, we fail to see what right he has in law or natural justice to insist that it shall be done at the risk of the servant, and not his own, when, notwithstanding the servant's objection to the condition of the machinery, he has requested or induced him to continue its use under a promise thereafter to repair it."

Mr. Cooley, in his work on Torts (pages 555, 559), says:

"It has been often—and very justly—remarked that a man may decline any exceptionally dangerous employment, but if he voluntarily engages in it he should not complain because it is dangerous. Nevertheless, where one has entered upon the employment and assumed the incidental risks, it is not reasonable to hold that other risks, which he is directed by the master to assume, are to be left to rest upon his shoulders merely because he did not take upon himself the responsibility of throwing up the employment, instead of obeying the order. Many considerations might reasonably induce the servant to hesitate under such circumstances. In many cases the consequences might be very serious should he refuse to obey a lawful command of the master; and any command may not be clearly and manifestly unlawful which directs the doing of nothing beyond the general scope of the business. The servant who refuses to obey must consequently expect to take upon himself the burden of showing a sufficient cause for the refusal. However clear the case might be to him, it might not be easy to make a showing satisfactory to third parties, who would naturally assume that the order was given in good faith, and that the master understood better than another the risks to be encountered in his business. The servant also, it may reasonably be assumed, would to some extent have his fears allayed by the commands of a master, whose duty it would be not to send him into danger, and who might therefore be supposed to know, when he gave the command, that the dangers were not such or so great as the servant had apprehended.

"It is also negligence for which the master may be held responsible, if, knowing of any peril which is known to the servant also, he fails to remove it in accordance with assurances made by him to the servant that he will do so. This case may also be planted on contract, but it is by no means essential to do so. If the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume its risks. So far as the particular peril is concerned, the

implication of law is rebutted by the giving and accepting of the assurance; for nothing is plainer or more reasonable than that parties may, and should, where practicable, come to an understanding between themselves regarding matters of this nature."

Mr. Deering on Negligence, § 196, says:

"Where injury results not from anything that is incident to the employment, but from a temporary peril, to which he is exposed by the negligent positive acts of the employer, he can recover."

Shearman & Redfield on Negligence, § 209, say:

The servant cannot avoid responsibility "if he continues in his work for any considerable time, knowing these facts, without being induced by his master to believe that a change will be made, and without making any complaint of such defects, or calling the attention of his master to them."

The doctrine laid down by these authors is supported by a long line of well-considered cases. In *Greene v. Railway Co.*, 31 Minn. 248, plaintiff was in the service of defendant as locomotive engineer on a train running between Minneapolis and Albert Lea. On reaching the former place in the morning with his train, upon examining his engine he discovered that the "chafing irons" between the engine and tender were partly broken off. He immediately reported the fact on the "repair-book" to the foreman of the round-house, whose duty it was to have the repairs made, and to direct what engine should go out. On returning in the evening to go out with his train he found the engine out, but not repaired. On inquiring of the foreman why the repairs had not been made, the reply in substance was that he had not had time. On plaintiff's suggesting that he did not like to take out this engine, that it was not safe, the foreman replied that he was short of engines to do the work of the road, and had no other to send out, and added:

"Proceed with that, and you can get it fixed at Albert Lea, if you have time; if not, I will remedy it when you get back." The plaintiff did so, and on the way collided with another train (for which he does not appear to be responsible), and in attempting to escape was caught between the engine and tender, the defects in the "chafing irons" causing the engine to override the tender, and close up the gang-way through which he was attempting to escape.

In *Manufacturing Co. v. Morrissey*, 40 Ohio St. 148, plaintiff was working upon a jointer which was out of repair.

In *Clarke v. Holmes*, 7 Hurl. & N. 937, plaintiff was employed to oil dangerous machinery. When he entered upon the service certain of the machinery was fenced, but the fencing became broken by accident.

In *Hough v. Railway Co.*, 100 U. S. 213, there was a defect in the locomotive which the deceased had in charge.

"There can be no doubt," say the Court, "that, where a master has expressly promised to repair a defect, the servant can recover for an injury caused thereby, within such a period of time after the promise as it would be reasonable to allow for its performance, and, as we think, for an injury suffered within any period which would not preclude all reasonable expectation that the promise might be kept."

In *Railroad Co. v. Duffield*, 12 Lea, 63, plaintiff was supplied with a defective hammer to drive railroad spikes. He testified:

"Of course, I was obliged to see that the hammer was broken. Any man who wasn't blind could have seen the condition of the hammer. I knew when I saw it that it wouldn't do to drive spikes with, and that is why I spoke to the section boss about it."

In *Furnace Co. v. Abend,* 107 Ill. 44, a locomotive

foot-board was defective, from which deceased fell while oiling the engine.

In *Parody v. Railway Co.*, 15 Fed. Rep. 205, the injury was occasioned by a defective draw-bar.

In *Laning v. Railroad Co.*, 49 N. Y. 521, the court say:

" Where the servant has full and equal knowledge with the master that the machinery or materials employed are defective, or that the fellow-servant is incompetent, and he remains in the service, this may constitute contributory negligence; but if it appears that the master has promised to amend the defect, or other like inducement to remain has been held out to the servant, the mere fact of his continuing in the employment does not, of itself, as matter of law, exonerate the master from liability, but the question of contributory negligence is one of fact for the jury."

See, also, *Pieart v. Railway Co.* (Iowa, 1891) 47 N. W. Rep. 1017; *Kane v. Railway Co.*, 128 U. S. 91 (9 Sup. Ct. Rep. 16); *District of Columbia v. McElligott*, 117 Id. 621, 631 (6 Sup. Ct. Rep. 884); *Railway Co. v. Drew*, 59 Tex. 13; *Patterson v. Railroad Co.*, 76 Penn. St. 389; *Mehan v. Railroad Co.*, 73 N. Y. 585; *Booth v. Railroad Co.*, Id. 38; *Coombs v. Cordage Co.*, 102 Mass. 572, 578; *Greenleaf v. Railroad Co.*, 33 Iowa, 52.

This principle has been recognized and approved by this Court. In *Chicago & Northwestern Railway Co. v. Bayfield*, 37 Mich. 205, the servant was justified in obeying the orders of his superior. Chief Justice COOLEY (page 212) says:

" The risk was not fairly upon the servant's shoulders;" and again: " We agree with the supreme court of Pennsylvania, that where a servant, in obedience to the orders of his superior, incurs the risk of machinery which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable that it may be safely used by extraordinary caution or skill, the case is not to be regarded as one of concurring negli-

gence;" citing *Patterson v. Railroad Co.*, 76 Penn. St. 389, 394.

In *Swoboda v. Ward*, 40 Mich. 420, 423, the Court, after laying down other general rules, say:

"If, however, the servant, with full knowledge of the facts, and understanding the increased risk occasioned thereby, *in the absence of any promise by the master to remedy the same*, consents to and remains in the master's employ, then he voluntarily incurs such increased risk."

See also *Lyttle v. Railway Co.*, 84 Mich. 289. *Jones v. Railway Co.*, 49 Id. 573, recognizes the right of the servant to show that he did not consent or agree to the change or performance of extra duties, and that he did not freely and voluntarily enter upon a discharge of new duties imposed. The new duties in that case involved extra hazard.

It is insisted, however, that the dangerous condition and character of this machinery was known to plaintiff, and that he was guilty of concurring negligence in approaching it; that he did not exercise ordinary care, and might have gone around on the other side of the rollers, and thus have avoided the danger. Knowledge of the existence of a defect or danger, while it is evidence of contributory negligence, is not conclusive. In the cases already referred to the existence of the danger was known to plaintiff, and in all of them it is held that the question of plaintiff's contributory negligence is for the jury. In *Coombs v. Cordage Co.*, 102 Mass. 572, 578, it is said:

"Inattention which has led to a collision or a fall, if duly accounted for, or if excused or occasioned by the nature of the employment, is no hindrance to a recovery when the injury is legally imputable to a defect without which the fall would not have occurred, or the collision would have been harmless.   *   *   *   Thus attention might be prevented by the darkness of night, or by the

duty to couple cars at a particular moment, or, as is contended in this case, to separate hemp.    *    *    * Knowledge is only one piece of evidence bearing on the question of negligence; and how much it should bear depends on all the circumstances, and is for the consideration of the jury."

In *Byerly v. Anamosa*, 79 Iowa, 204, it was held that the question of plaintiff's contributory negligence in driving a horse along a street with knowledge of conditions rendering it dangerous was for the jury, as such act was not *per se* negligence.

In *Harris v. Clinton Tp.*, 64 Mich. 447, 453, the Court say:

"It is not a universal rule that the defendant is excused from liability merely because the plaintiff, knowing of the danger caused by defendant's negligence, voluntarily incurs that danger. If the defendant has so acted as to induce the plaintiff, acting with reasonable prudence, to incur the danger, or if plaintiff, by defendant's negligence, is placed in a situation of peril, to escape which he voluntarily incurs another danger, the defendant is liable, although the plaintiff may not in the emergency have pursued the course which ordinary prudence would have dictated."

In *Kane v. Railway Co.*, 128 U. S. 91, the Court say:

"In determining whether an employé has recklessly exposed himself to peril, or failed to exercise the care for his personal safety that might reasonably be expected, regard must always be had to the exigencies of his position,—indeed, to all the circumstances of the particular occasion."

In *Greenleaf v. Railroad Co.*, 33 Iowa, 52, the Court say:

"If the service to be performed by Macy [the deceased] was of a character to require that his exclusive attention should be fixed upon it, and that he should act with rapidity and promptness, it could hardly be expected that he should always bear in mind the existence of the defect, or be prepared at all times to avoid it."

In *Snow v. Railroad Co.*, 8 Allen, 441, the superstructure or road-bed between the tracks of the defendant's road where it crossed the highway, at a point where the trains were made up, was defective. It was necessary for the person whose duty it was to unshackle the cars or to fasten them together to pass and repass over the space covered with plank between the tracks frequently, and with rapidity, and with his attention in great degree diverted from the surface over which he passed, and directed to the special duty or service of separating and uniting the cars, in order to prepare the trains for transit. While engaged in that service in the usual and ordinary mode, plaintiff was thrown down by reason of the defect in the road, The court say:

"As the plaintiff was in the discharge of his duty in placing himself in a perilous position,—a duty the performance of which was known to and sanctioned by the defendants,—the fact that he was in such position has no tendency to prove that he was negligent or careless. The question of due care in such case depends on the manner in which the plaintiff performed the duty incumbent on him,—whether he acted with due skill and caution, and conducted himself in the usual and ordinary way in which similar acts are done by persons engaged in like employment, and on other considerations of a like character, which do not fall within the range of ordinary observation and experience. The question of negligence was therefore a proper subject of evidence, and should have been submitted, with proper instructions, to the jury for their determination.

"Nor do we think that it was any the less a question of fact to be decided by the jury because it appeared that plaintiff had previous knowledge of the defect in the road which caused the accident. *Reed v Northfield*, 13 Pick. 98; *Smith v. Lowell*, 6 Allen, 40. This certainly was a circumstance to be taken into consideration, but by no means a decisive one. If the service to be performed by the plaintiff was of a character to require that his exclusive attention should be fixed upon it, and that

he should act with rapidity and promptness, it could hardly be expected that he should always bear in mind the existence of the defect, or be prepared at all times to avoid it."

In *Malloy v. Walker Tp.*, 77 Mich. 448, the Court say:

"If it was the negligence of the defendant in not repairing the highway which placed the deceased and those under his charge in a perilous position, no negligence could be imputed to the deceased if, acting upon that occasion, as it appeared to him to be, for the safety of himself and party in his charge, he did not take the precaution which, upon consideration, a more prudent man might have taken. At least it was a question for the jury, and fairly submitted."

Nothing short of gross negligence on the part of the injuring party can relieve the injured party from the exercise of care. The promise made by defendant in this case did not absolve plaintiff from the exercise of reasonable care while about this dangerous machinery; but what shall constitute such care in a given case must necessarily depend upon all the facts and circumstances of that case. He is held to that degree of care which every prudent man is expected to employ under similar circumstances in carrying on the same kind of business. Here the gearing had been covered, because it was dangerous in its exposed condition, and because the employés of the mill, and this very plaintiff, were likely to come into contact with it. Plaintiff remonstrated, but he was directed to continue work which involved the probability of this contact. This is but a necessary inference from the plaintiff's complaint and the superintendent's reply. The performance of plaintiff's duties required him to go into the vicinity of this machinery. His work afforded very little opportunity for deliberation. It was necessary that he should act promptly. Hesitation was not expected of him, and the degree of care required of him with

respect to his own personal safety must be measured to some extent by the exactions of his employment, by its demands upon his attention, and by his devotion to its duties. His diligence and zeal in his master's service should count in his favor, and not against him, in determining this question.

In *Harris v. Clinton Tp., supra,* the Court say:

"Upon this issue there are two reasonable but different views which might be taken, and therefore the question should have been submitted to the jury. The fact that Sopher knew the location of the highway; that it was crooked; that there were no guides or barriers; that it was overflowed, and the water had raised since he last passed over it; and knew that some hazard was incurred in attempting to pass over it,—did not conclusively show that it was negligence in him to make the attempt. Of course, the increased hazard from the rising of the water called upon Sopher to exercise increased caution, and may have been a circumstance which, in the opinion of some persons, should have determined him to not make the attempt at all; but whether it was or not, in connection with the other facts, should have been left with the jury to determine."

"Where there is a chance, upon the facts shown, for ordinary candid and intelligent men to arrive at different conclusions, the question of contributory negligence is to be determined by the jury." *Adams v. Iron Cliffs Co.,* 78 Mich. 271; *Luke v. Mining Co.,* 71 Id. 364; and *Teipel v. Hilsendegen,* 44 Id. 461.

This is one of those cases where two reasonable and different views might be taken, and two men of equal candor might differ. In my judgment, the court below erred in taking the case from the jury, and in ruling that as a matter of law the plaintiff was guilty of contributory negligence.

The judgment will be reversed, and a new trial had, with costs of this Court to plaintiff.

CHAMPLIN, C. J., MORSE and LONG, JJ., concurred. GRANT, J., did not sit.