SANER *v.* LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.

MASTER AND SERVANT—INJURY TO RAILROAD EMPLOYÉ—CONTRIBUTORY NEGLIGENCE.

Plaintiff's intestate, a young man 18 years of age, was a member of defendant's extra section gang, and as such went from place to place with the construction train, and assisted in unloading material. A train of 20 flat cars had been unloaded, and was returning at the rate of from 15 to 25 miles an hour. The men were riding upon the pilot of the engine, which was running backward, pulling the train. When about a mile distant from the place where the men were to alight, the conductor ordered them to go to the rear of the train, so as to be ready to drop off when the train should slack up for that purpose. The deceased started upon a run to obey the order, fell between the cars, and was killed. He had been in defendant's employ for about three months, and had been repeatedly cautioned by the foreman of the gang against running backward and forward over the cars while they were in motion. *Held*, that he was guilty of such negligence as to preclude a recovery for his death. McGRATH, C. J., dissenting.

Upon the foregoing facts, it was *held*, by MCGRATH, C. J. (the remaining Justices expressing no opinion):

(1) That the doctrine of fellow-servant had no application.

(2) That, it appearing that the conductor was in control with respect to the transportation of the men, he, and not the gang foreman, was for the time being the superior in authority.

(3) That, in view of previous instructions to the deceased, it could not be said that the risk of injury in the manner stated was among the risks assumed by him at the time he entered defendant's service.

(4) That the question of his inexperience was for the jury.

(5) That the position taken by him upon the engine could not be said to have contributed to the injury.

(6) That, the principal question in controversy being as to whether the order was in fact given by the conductor, it was not error to refuse an instruction that the fact that the deceased fell between the cars and was killed raised no presumption that the defendant was negligent.

Error to Hillsdale; Lane, J.    Submitted June 14, 1895. Decided December 30, 1895.

Case by John Saner, administrator of the estate of Frank Saner, deceased, against the Lake Shore & Michigan Southern Railway Company, for the alleged negligent killing of plaintiff's intestate.    From a judgment for plaintiff, defendant brings error.    Reversed.

*C. E. Weaver* (*George C. Greene* and *O. G. Getzen-Danner*, of counsel), for appellant.

*Fellows & Chandler* (*John E. Bird*, of counsel), for appellee.

MCGRATH, C. J.    Frank Saner, a young man 18 years of age, was employed by defendant as a common laborer, in what is termed the "extra section gang."    Their duties were similar to those of the ordinary section gang, except that they went with the construction train from place to place, and assisted in unloading materials that were used. Decedent commenced to work for the company May 11,

1892. He had had no previous experience in railroad work. On the 31st day of August, 1892, Saner and his companions had been ordered to go with the construction train and unload a load of gravel. The train consisted of an engine, caboose, and from 20 to 25 flat cars. On the return trip, after the gravel had been unloaded, Saner and his companions, in order to avoid the dust, were riding on the pilot. As they approached the place where they were to alight, and while the train was running from 15 to 25 miles an hour, the conductor of the train ordered them to go back to the rear of the train, and get ready to get off, as the train would not stop, but simply slack up. While attempting to comply with the conductor's order, Saner, after he had passed over four or five cars, fell between two cars, and was killed. Plaintiff recovered a judgment of $803.24. Defendant appeals.

It is insisted that the conductor, Rockwood, was a fellow-servant of the decedent, and, therefore, that a recovery should not have been permitted. The case is clearly governed by the rule laid down in *Chicago & Northwestern R. Co.* v. *Bayfield*, 37 Mich. 205. See, also, *Walker* v. *Railway Co.*, 104 Mich. 606; *Harrison* v. *Railroad Co.*, 79 Mich. 409; *Roux* v. *Lumber Co.*, 85 Mich. 519; *King* v. *Lumber Co.*, 93 Mich. 172.

It was insisted upon the trial that the conductor had no authority over decedent or his companions. The court submitted that question to the jury. It is clear from defendant's testimony that the conductor was in no sense subject to the orders of the foreman, relative to the movements of the train or the transportation of these men. He was moving this train, and transporting these employés and the materials, under orders from the transportation department. He was in charge of the train, and, respecting the matter of the transportation of the employés, he was the superior in authority. Respecting a matter connected with his transportation upon that train, decedent did what he was ordered to do by his superior in

charge of that transportation. An instruction, therefore, that Rockwood was master of the train and of the matter of transportation would have been justifiable.

It is insisted, however, that deceased was hired to work upon that train; that he was familiar with the way and manner in which the work was done; that he had gone back and forth over the cars while in motion, many times, voluntarily; that he had been repeatedly instructed by his foreman not to go back and forth over the train while it was in motion; that he was careless ·in the execution of the order; that whatever risk there was attending the way and manner in which decedent actually performed his service was assumed by him when he entered the service of defendant; that no order was given by Rockwood to go to the rear of the train; that he was not inexperienced, as alleged, and that his fall was clearly the result of his own carelessness. It cannot be contended that deceased was employed to do what he was instructed not to do, or that the doing of what he was told not to do was one of the assumed risks of his employment. Had he voluntarily done what he was ordered to do, in the face of an express order not to do that very thing, we would have been compelled to say that defendant was not at fault, and that the injury was the result of decedent's own carelessness and disobedience of orders. As to whether he was careless in the execution of the order, or whether an order was given, or whether he was inexperienced, these were questions for the jury, and they were properly submitted to them.

Error is assigned upon the refusal of the court to instruct the jury that "Saner's duty was to ride on some one of the flat cars, or in the caboose, and not to pass back and forth over the moving cars, and the position he had taken upon the engine was a position he had no right to take, and the defendant cannot be held liable for what befell him in his attempt to reach the rear of the train, whether undertaken voluntarily, or on direction of the

conductor." The injury resulted in the course of the execution of an order given by the conductor. It was not an order to ride elsewhere because of a violation of duty, or because decedent and his companions had stationed themselves in a place where they had no right to be, and, had it been, it is at least doubtful whether the conductor would have been justified in ordering them into greater peril. The train was 25 cars in length, and the same peril would have been encountered had deceased been ordered from any one car to another.

The court was requested to instruct the jury that the fact that decedent fell between the cars and was killed raises no presumption that defendant was negligent. There was no room for presumptions in the case. Plaintiff produced ample testimony tending to show that the train was running from 20 to 25 miles an hour, that the conductor gave the order complained of, and that decedent, in endeavoring to comply with the order, fell between the cars and was run over. It all occurred in broad daylight. · Defendant's testimony tended to show that the train was running from 15 to 18 miles an hour, and that the conductor did not give an order, but simply made a suggestion. There was no question but that decedent was killed while attempting to go from the front to the rear of the train, preparatory to leaving the train. It is not contended that such an order was a proper one to give. On the contrary, defendant offered testimony tending to show that the men had been generally instructed not to do the very thing which decedent attempted to do. The principal question in the case was as to whether an order had been given. The court submitted that question to the jury, instructing them that if this was a mere suggestion on the part of Rockwood that they had better go, and it was not understood as an order that they should go, or which it was their duty to obey, then plaintiff could not recover. The question was not whether defendant had been negligent, but whether de-

ceased had been ordered to do what it is conceded was hazardous.

The allowance of the amendment to the declaration was a matter within the discretion of the court, and there was no abuse of that discretion.

It is urged that the court instructed the jury that the father of decedent might be allowed the cost of a tombstone placed at the grave. The cost of the burial lot and other funeral expenses, including the tombstone, ($25), was given in the testimony at $83. The court, although mentioning the tombstone, limited the recovery for these items to $53; clearly intending to eliminate the cost of the tombstone, and one other item, of $5.

It is contended that the testimony shows that decedent and his companions were running when decedent fell, and that the court should have instructed the jury that he was therefore guilty of contributory negligence. The train was moving westerly. They were returning to a point east of Blissfield. When given the order, they were then within one mile, or, as another witness says, within one mile and a half, of Blissfield. Whether decedent was negligent or not would depend somewhat upon the necessity for haste in complying with the order. All of the parties to whom the order was given were running towards the rear end of the train. The question was properly left to the jury.

I find no error in the record, and think that the judgment should be affirmed.

LONG, J. I am unable to agree with the Chief Justice in this case, and think there is one question only which need be discussed. Even though the conductor gave the order for these men to go back to the rear end of the train, and prepare to get off at Blissfield, I think the plaintiff's intestate was negligent in going over the cars, and for that reason the plaintiff cannot recover.

Mr. Van Wye, the foreman of the gang in which the

deceased worked, testified that during the time he worked there the deceased went backward and forward over the cars (the empty flat cars) when they were in motion; that he was full of fun at all times, and he could not keep him still; that he (the witness) cautioned him about going over the cars while in motion. And the witness added, "I was scared, myself, about it."

Mr. Elliott, the former foreman of the gang, also testified as follows:

"The first day I was on, I gave instructions to Saner and the other men about being careful. I said to be careful in going over the train, and not run back and forth when the train was in motion. I have seen him go backward and forward from one car to another when the train was in motion, always on the run. That was not a prudent thing to do. I have given him caution about that."

A witness by the name of Ellsworth was one of the parties who started back to the rear end of the train. He says that, after they started to go back, Belcher, who was also going back, "went by me [witness] on a dead run, and this Saner boy next; and, when he got on the second car from me, he fell between the cars. I was standing, and looking right at him. Saner was running as fast as he could toward the rear end of the train. He was carrying his dinner pail in one hand and his shovel in the other."

This testimony was in no sense contradicted, and it appears conclusively that the deceased went back over those cars on a run after having been cautioned from time to time that it was dangerous. The defendant asked the court, under the circumstances, to direct a verdict for the defendant. This was refused. We think the instruction should have been given. The deceased was clearly so negligent that the case should have been taken from the jury on that ground.

The judgment will be reversed, and a new trial ordered.

Grant, Montgomery, and Hooker, JJ., concurred with Long, J.