[S. F. No. 3312.   Department Two.—June 21, 1905.]

# E. E. ANDERSON, Respondent, v. J. M. SEROPIAN et al., Appellants.

MASTER AND SERVANT—DEFECTIVE MACHINERY—NOTICE TO MASTER—
PROMISE TO REPAIR—DIRECTION TO SERVANT—LIABILITY OF MAS-
TER.—Where a defect in machinery arises during its operation, of
which the servant gives notice to the master, who promises to
repair it, the servant does not assume the risk of its continued
operation pending such promise, if it was operated prudently and
slowly without obvious danger; and where the employer, without
fulfilling the promise, ordered the servant to operate the machine
more rapidly, if the increased peril was not so glaringly obvious
that no prudent man would have undertaken it under the promise
and direction given, the employer is liable for the resulting injury.

ID.—QUESTIONS OF FACT—CONCLUSIVENESS OF VERDICT.—The question
whether the servant in continuing to operate the defective machin-
ery under a promise to repair, acted as a reasonable and prudent
man would act, and whether the peril was so obvious that no pru-
dent man would hazard obedience to the order given, and whether
the plaintiff understood and appreciated such peril are questions
of fact for the jury, upon which the verdict for the plaintiff is
conclusive.

ID.—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF—APPRECIATION OF
PERIL.—The burden was upon the defendant to show the contrib-
utory negligence of the plaintiff, and to show not only his knowledge
of the defect, but also that in obeying the order of the defendant
to operate the machine more rapidly the plaintiff appreciated and
understood that he was incurring an obvious peril which no prudent
man would hazard.

ID.—DEFINITENESS OF PROMISE TO REPAIR — PRESUMPTION — INJURY
WITHIN TIME PROMISED.—A promise by the defendant to repair
when sufficient boards were stamped to keep the box-makers busy
while the repairs were being made must be presumed to have been
made with special reference to a time understood by both parties,
and to be sufficiently definite; and where the injury happened on
the same day the promise was given and while the plaintiff, under
order of the defendant, was operating the machine under an en-
deavor to keep up with the box-makers, pending the fulfillment of
the promise, the employer is liable.

ID.—COMPLAINT OF DEFECT—RELIANCE UPON PROMISE—INFERENCES.—
The servant's complaint of the defect need not state an appre-
hension of danger, nor that the servant will leave the service if
the defect is not remedied.   It is sufficient if it can be fairly
inferred that the servant is complaining on his own account, and

that he was induced to remain in the service by reason of the promise.

ID.—MODE OF OPERATION WITH DEFECTIVE SCREW—ESTOPPEL OF DEFENDANTS.—Where the mode of operating the machine with a defective screw was approved by one of the defendants, who assured plaintiff it was all right so to work it and to go ahead, with the promise to remedy the defect later, the defendants are estopped to urge that plaintiff's method of operation was unauthorized or improper.

ID.—REPLACEMENT OF DEFECTIVE SCREW.—The plaintiff was not bound to replace the defective screw with another where it appears that he asked and made search for another and that no such screw was available in the city, and that it was the fault of the defendant that it was not replaced.

ID.—PROXIMATE CAUSE OF INJURY—QUESTION OF FACT.—Where negligence of the plaintiff in the use of defective machinery, in the use of which he was injured, is alleged, the question whether the defect was the proximate cause of the injury was a question of fact to be determined by the jury.

ID.—INSTRUCTIONS—JURY NOT MISLED.—All of the instructions given are to be construed together, and when they state the law fairly and fully when taken together, the jury cannot be deemed to have been misled by isolated instructions not embodying the whole law upon the subject which the jury could not have misunderstood.

ID.—REQUESTED INSTRUCTION—ADJUSTMENT OF MACHINE.—A requested instruction as to the adjustment of the machine, which assumed the duty of the plaintiff to adjust it, and asked for a verdict on that subject, omitting any consideration of defendant's promises, was properly refused.

ID.—AMPUTATED HAND—EVIDENCE.—The amputated hand of the plaintiff, bearing marks of having passed under the stencil of the defective machine, was properly admissible in evidence as tending to show that fact.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

L. L. Cory, and M. B. Harris, for Appellants.

The promise was too indefinite and contingent to relieve defendant from the assumption of risk. (Buswell on Personal Injuries, p. 437; *Standard Oil Co.* v. *Helmick,* 148 Ind. 457, 47 N. E. 14; *McFarlan Carriage Co.* v. *Potter,* 153 Ind. 107, 53 N. E. 465; *St. Louis etc. Ry. Co.* v. *Kelton,* 55 Ark.

483, 18 S. W. 933; *Rice* v. *Eureka Paper Co.,* 70 App. Div. 336, 75 N. Y. Supp. 49; *McAndrews* v. *Montana Union Ry. Co.,* 15 Mont. 290, 39 Pac. 85; *Wilson* v. *Winona R. R. Co.,* 37 Minn. 326,[1] 33 N. W. 908; *Shackelton* v. *Manistee etc. Ry. Co.,* 107 Mich. 16, 64 N. W. 728. The action of the servant must have been induced by the promise. (Bailey on Personal Injuries, sec. 3079; *Indianapolis etc. Ry. Co.* v. *Wilson,* 114 Ind. 20,[2] 14 N. E. 721, 15 N. E. 824; *Showalter* v. *Fairbanks etc. Co.,* 88 Wis. 376, 60 N. W. 257; *Eureka Co.* v. *Bass,* 81 Ala. 200,[3] 8 South. 216; *Daugherty* v. *Midland Steel Co.,* 23 Ind. App. 78, 53 N. E. 844; *Atchison etc. Ry. Co.* v. *Midgett,* 1 Kan. App. 138, 40 Pac. 995; *Halloran* v. *Union Iron etc. Co.,* 133 Mo. 470, 35 S. W. 260; *Trotter* v. *Chattanooga Furniture Co.,* 101 Tenn. 257, 47 S. W. 425; *Brewer* v. *Tennessee etc. Co.,* 97 Tenn. 615, 37 S. W. 549.) The defect must have been the proximate cause of the injury. (Bailey on Personal Injuries, sec. 1025; *Kauffman* v. *Maier,* 94 Cal. 269, 29 Pac. 481; *Trewatha* v. *Buchanan etc. Co.,* 96 Cal. 494, 28 Pac. 571, 31 Pac. 561; *Vizelich* v. *Southern Pac. Co.,* 126 Cal. 587, 59 Pac. 129; *Puckhaber* v. *Southern Pac. Co.,* 132 Cal. 363, 64 Pac. 480.)

Henry Brickley, and Smith & Ostrander, for Respondent.

The obedience to order excuses the plaintiff, where the danger was not so imminent that no man of ordinary prudence would obey the employer. (*Pennsylvania Ry. Co.* v. *O'Shaughnessy,* 122 Ind. 588, 23 N. E. 675; *Illinois Steel Co.* v. *Schymamowski,* 162 Ill. 447, 44 N. E. 876; *Shortel* v. *City of St. Joseph,* 104 Mo. 114,[4] 16 S. W. 397; *Hawley* v. *Northern Central Ry. Co.,* 82 N. Y. 370; *Chicago etc. Ry. Co.* v. *Bayfield,* 37 Mich. 205.) The plaintiff had the right to rely upon the promise given after complaint. (*McFarlan Carriage Co.* v. *Potter,* 153 Ind. 107, 53 N. E. 465; *Schultz* v. *Pabst Brewing Co.,* 57 Minn. 303, 59 N. W. 188; *Hough* v. *Railway Co.,* 100 U. S. 213; *Conroy* v. *Vulcan Iron Works,* 62 Mo. 35; *Greene* v. *Minneapolis etc. Ry. Co.,* 31 Minn. 248,[5] 17 N. W. 378; *East Chicago Iron and Steel Co.* v. *Williams,* 17 Ind. App. 573, 47 N. E. 26; *Barney Dumping Boat*

---

[1] 5 Am. St. Rep. 851.       [4] 24 Am. St. Rep. 317.

[2] 5 Am. St. Rep. 578.       [5] 47 Am. Rep. 785.

[3] 60 Am. St. Rep. 152 and note.

*Co.* v. *Clark,* 112 Fed. Rep. 92; *Rice* v. *Eureka Paper Co.,* 70 App. Div. 336, 75 N. Y. Supp. 49; *Roux* v. *Blodgett & Davis Lumber Co.,* 85 Mich. 519,[1] 48 N. W. 1092, 13 L. R. A. 725; *Eureka Co.* v. *Bass,* 81 Ala. 200,[2] 8 South. 216; *Hillje* v. *Hettich* (Tex. Civ. App.), 69 S. W. 491; *Indianapolis etc. Ry. Co.* v. *Ott,* 11 Ind. App. 564, 38 N. E. 842; *Wrist* v. *Erie City Iron Works,* 149 Pa. St. 263, 24 Atl. 291; *Chicago etc. Co.* v. *Van Dam,* 149 Ill. 337, 36 N. E. 1024; Cooley on Torts, 559; *Boyd* v. *Blumenthal,* 3 Penne. (Del.) 564, 52 Atl. 330; *Narramore* v. *Cleveland etc. Ry Co.,* 96 Fed. 298, 48 L. R. A. 68.) The question of contributory negligence, and whether plaintiff appreciated and understood the danger arising from the defect, is one of fact, which the jury have found for plaintiff. (*Foley* v. *California Horseshoe Co.,* 115 Cal. 184,[3] 47 Pac. 42; *Verdelli* v. *Gray's Harbor Com. Co.,* 115 Cal. 517, 47 Pac. 364; *Nofsinger* v. *Goldman,* 122 Cal. 609, 55 Pac. 425; *New Jersey and N. Y. R. R. Co.* v. *Young,* 49 Fed. Rep. 723.) The question of proximate cause of the injury is one of fact to be determined by the jury. (*Perry* v. *Southern Pac. R. R. Co.,* 56 Cal. 578; *Batcher* v. *Vaca Valley etc. R. R. Co.,* 67 Cal. 518, 8 Pac. 174; *Smith* v. *Occidental S. S. Co.,* 99 Cal. 462, 34 Pac. 84; *Finkeldey* v. *Omnibus Cable Co.,* 114 Cal. 33, 45 Pac. 996; *Mansfield* v. *Eagle Box Co.,* 136 Cal. 622, 69 Pac. 425; *Grijalva* v. *Southern Pac. Co.,* 137 Cal. 569, 70 Pac. 622.)

LORIGAN, J.—This action was brought to recover damages for personal injuries sustained by plaintiff while in the employment of defendants.

From a judgment in favor of plaintiff for seven thousand five hundred dollars, and an order denying their motion for a new trial defendants appeal.

We epitomize the evidence, save where it is necessary to set it forth fully in order to properly understand some particular point urged by appellants relative to it.

At the time of the injury sustained by plaintiff, defendants were engaged in the city of Fresno in the business of packing raisins and other fruits, and in the conduct of such business were using machinery and other appliances operated by steam power.

[1] 24 Am. St. Rep. 102.    [3] 56 Am. St. Rep. 89.
[2] 60 Am. Rep. 152 and note.

Plaintiff, a young man twenty-two years of age, was employed by defendants to operate a stamping machine or press for the purpose of stamping upon boards, to be used in the contruction of boxes, letters, figures, and other characters. In this machine the stencil or plate was attached to a circular drum upon the press, which, as it revolved, impressed the figures from the stencil upon the board being printed; there was attached to the machine an automatic device called an automatic feed, which worked back and forth in a slot upon the platform immediately in front of the roller, and which was attached to a clutch at the side, which clutch was caught by a small lug or projection upon a wheel, so that, at every revolution of the roller, the wheel would cause the small clutch attached to it to engage or strike the dog or lug, which would cause a small guide, working back and forth in the slot on the platform, to push the boards being printed under the roller.

The plaintiff, when he went into the employment of defendants, was inexperienced in the operation of such a machine, except that he had previously run one for half a day at some other place. He had been operating this machine for defendants three days when he was injured.

On the first day he operated the machine it worked fairly well, but on the second, owing to a defective screw which served to fasten the clutch on the side in such a position as to engage the lug and operate the automatic feed, the latter would not work. The defect in the screw consisted of its having become so worn as to be constantly loosening, necessitating the stopping of the machine by plaintiff every few minutes to tighten it. He looked for another screw about the premises to replace it, but found none, and sent a young man for the same purpose, but he could not find any.

The constant stopping of the machine to tighten the screw and insure an operation of the automatic feed retarded plaintiff's work and he fell behind with it. It then suggested itself to him that he might clamp the automatic feed down and have the type on the roller do the feeding. This he did by tightening the screw so that the clutch dropped down instead of remaining up, and clamping the guide on the automatic feed down permanently in the center of the table. Thereafter, as the roller came around, the first letter which

projected from the plate on the roller some quarter of an inch would engage the board to be printed and draw it through the press. In order to do this it was necessary also to move the guide on the automatic feed three or four inches nearer the rollers than when the automatic feed was working. This he did, and the result was that in guiding the board through the press it brought his hands that much nearer to the rollers.

After plaintiff had clamped down the automatic feed and was operating the machine without it, the foreman of defendants came to where he was working it, and plaintiff asked him to provide a screw for the clasp; that the one in the machine was worn out and he could not work the automatic feed without a new one. This the foreman promised to get but failed to do so.

On the first day when the automatic feed was working it was feeding a board to the machine every revolution, as it was plaintiff's duty to make it do, but after he fastened it down plaintiff fed it by hand every other revolution, until the morning of the third day, when he commenced feeding it again every revolution, under the following circumstances: On the morning of that day George Seropian, one of the defendants, came to where plaintiff was operating the machine and watched him working it. He then said to plaintiff (we quote from testimony of plaintiff): " 'Anderson, you have got to work that faster. You cannot keep the box-makers going at that rate.' At that time I was feeding it every other revolution just as he came in there, and he saw that I was feeding it every other revolution. He told me I would have to feed it every revolution to keep up with the box-makers. I told him that I didn't like to, that I—some remarks about the machine being out of order, and then I told him about that screw on the feed that screw would work loose, the screw that held that catch on the table in an upright position, the one that was engaged by the catch on the roller. And he says, 'You will have to work that faster anyhow. Go ahead and work it; it will be all right; go ahead, work it, and just as soon as you get far enough ahead with the material for the box-makers to work on, why then we will fix the machine.' Then I went to work and fed it every revolution.' " That afternoon, while he was operating the machine and

printing a board at every revolution, his right hand was caught between the stencil on the rollers and so badly injured as to necessitate amputation.

Upon this appeal the main question with reference to the evidence in the case is addressed to the effect of the promise made by George Seropian, one of the defendants, upon which the case of the plaintiff rests.

It is not claimed that the plaintiff was negligent in operating the machine when the accident occurred, or negligent at all, excepting in so far as such negligence is asserted in the special points which appellants make in their discussion of the legal effect of the promise to repair made by appellants, or such as they claim arose from an improper use of the machine.

With reference to these points it is insisted: 1. That the promise to repair was too indefinite and contingent to relieve plaintiff from the assumption of risk; 2. That neither the complaint made to George Seropian about the operation of the machine, nor the promise given by him to repair it, was because of any fear on the part of plaintiff of any increased danger in the use of the defective machine, nor was plaintiff induced to remain in defendants' employment on account of such promise; 3. That the additional risk in the use of the machine because of the defect was occasioned by the unauthorized and improper use of the machine by plaintiff; 4. That the defect was one of such a kind as could have been easily repaired, requiring no mechanical skill, and should have been done by plaintiff, and the promise did not relieve him; 5. That, as the danger from the use of the defective machine was as obvious to plaintiff as to defendant, the assurance of defendant that at some future time the defect would be remedied, did not absolve the plaintiff from the charge of contributory negligence in its continued use.

An orderly consideration of these points suggests that we discuss the last point first.

Defendants there urge, as the plaintiff had the same knowledge of the dangerous condition of the printing machine by reason of the defective screw as the defendants did, that by continuing to operate it, notwithstanding the promise, he assumed the risk, and cannot hold the defendants responsible for his injuries.

The general rule undoubtedly is, that one who remains in the service of his employer after notice of a defect in the machine he is operating which increases the danger to which he is exposed, assumes the risk which the defect increases.

But there is a marked distinction in law between a case where the employee knows when he contracts to operate a machine, that it is defective, or a defect is subsequently disclosed in its operation, to which he does not call the attention of his employer, but continues to operate it in its defective condition, and a case where the machine, when· he takes charge of it, is in good condition, but a defect subsequently arises which is called to the attention of the employer, and the employee continues to operate it under a promise that the defect will be remedied.

In the latter case, by reason of the promise to repair, the general rule is qualified, and the employee is entitled to recover should injury result to him while the promise is in force. And while it is true that even in the latter case, if the machine upon becoming defective is so obviously dangerous that no prudent man would operate it, even in obedience to an order of the employer under a promise to repair it, and the promise under such circumstances will not protect the employee, still, if under the promise, and in obedience to the direction of the employer, the employee continues in the operation of the defective machine, incurring risks which, while dangerous, are not so obviously so that they are attended with immediate injury, or where by the exercise of care and caution it is probable the machine may be safely operated, a different rule applies, and the employer will be liable for the injury.

And whether the employee in continuing to operate a defective machine, under promise to repair, and incurring the risks incident thereto, was acting as a reasonable and prudent man would act, is a question of fact to be determined by the jury. We find these principles of law quite uniformly sustained by the authorities, from some of which we quote, and to others make reference.

In *Greene* v. *Minneapolis and St. Louis Ry.* Co., 31 Minn. 248,[1] [17 N. W. 378], the plaintiff, a locomotive engineer, had called the attention of the defendant to a defect in the en-

---

[1] 47 Am. Rep. 785.

gine which he was operating, and which defendant promised to repair at the end of the next trip. While making that trip the plaintiff was injured while operating the defective engine, and by reason of the defect. The court said in discussing the effect of the promise given to him: "But it is now almost as equally well settled, that if a servant who has knowledge of defects in the instrumentalities furnished for his use, gives notice thereof to his employer, who thereupon promises that they shall be remedied, the servant may recover for an injury caused thereby, at least where the master requested him to continue in the service and the injury occurred within the time at which the defects were promised to be remedied, and where the instrumentality, although defective, was not so imminently and immediately dangerous that a man of ordinary prudence would have refused longer to use it. . . . Courts also differ as to the ground upon which this rule should be placed. Some place it upon the ground of policy and justice, upon a consideration of the unequal situation of master and servant; others upon the ground that, in such cases, the facts rebut the presumption of a waiver on the part of the servant; others upon the ground of a contract on the part of the employer, implied from the facts, that if the servant continued in the service in the mean time and until the defects are remedied, the employer and not the servant will assume the risks.

"We will not attempt to determine which of these is the best or the most logical reason for the rule except to say that the last seems to us very forcible; especially where there is a request to the servant to continue the service. It is sufficient for us that the rule has generally commended itself to the judicial mind, as it does to us, as founded in sound policy and common justice. If the emergencies of a master's business require him temporarily to use defective machinery, we fail to see what right he has in law or natural justice to insist that it shall be done at risk of the servant, and not at his own, when, notwithstanding the servant's objection to the condition of the machinery, he has requested or induced him to continue its use under a promise thereafter to repair it."

In the case of *Roux* v. *Blodgett & Davis Lumber Co.*, 85 Mich. 519,[1] [48 N. W. 1092], plaintiff was employed in de-

---

[1] 24 Am. St. Rep. 102.

CXLVII. Cal.—14

fendant's sawmill upon a band-saw. He was working close to adjacent dangerous machinery, which prior to the accident had been covered so as to prevent him from coming in contact with it. This covering had become broken, leaving the gearing exposed. Plaintiff called the attention of the mill superintendent to this condition of the gearing, and the latter promised to cover it that night. When plaintiff went to the mill in the morning he found it still exposed and again called the attention of the superintendent to it, who promised to fix it at noon, telling plaintiff to take care of himself till noon and it would then be fixed. Before noon the plaintiff's clothes caught upon the gearing and his leg was crushed. On appeal from a judgment in his favor, the court, quoting numerous authorities to the point (as did the court in the previous case we have referred to), said: "It is urged that plaintiff's knowledge of the exposed and dangerous condition of this gearing was equal to that of his employers, and that by continuing his work, he assumed the risk. This rule is not applicable to circumstances of the present case. The risk to which plaintiff was exposed on the day of the injury was not one existing at the time of his engagement. It was a temporary peril. It did not arise until the day before the injury. . . . Plaintiff, acting as a prudent man should, had, on the evening before, and again on the very morning of the accident, notified defendant of the fact that the gearing was exposed, and defendant had, in recognition of the danger, and of plaintiff's exposure thereto, promised to replace the covering, and instructed the plaintiff to continue his work until noon, when it should be done. There was no voluntary assumption of the risk on the part of the plaintiff. He proceeded under protest. It was postponed to suit defendant's convenience, and not that of plaintiff."

In the case of *Eureka Paper Co.* v. *Bass*, 81 Ala. 200,[1] [8 South. 216], it is said: "Where, however, the employee or servant electing not to abandon his employment, gives notice of such defect in the appliance or instrumentalities used by him, and the employer promises to remedy the defect, the relationship of the contracting parties at once undergoes a change. The assurance of the employer that the danger shall be removed is an agreement by him that he will assume the

[1] 60 Am. Rep. 152.

risk incident to the danger for a reasonable time. It obviates the objection that the continuance of the servant in the service was an implied engagement by him to assume such risks pursuant to the original presumption upon his entering the service.''

In *Hillje* v. *Hettich* (Tex. Civ. App.), 65 S. W. 491, the court speaks of the general rule and its limitation as follows: ''The servant has a right to rely upon the assumption that the master has done his duty; but if he becomes apprised that he has not, and learns that the machinery is defective, the place unnecessarily dangerous, . . . he assumes the risk incident to the condition of affairs, unless he informs the master, and the latter promises to correct the evil. In this latter event, so long as he has reasonable grounds to expect and does expect that the master will fulfill his promise, he does not by continuing the employment assume the additional risk arising from the master's neglect. If he then be injured by reason of that neglect, he may recover provided it be found that a man of ordinary prudence under all the circumstances would have encountered the danger by continuing in the employment.''

Closing these quotations with one from Cooley in his work on Torts (sec. 555), that author says: ''It has been often and very justly remarked that a man may decline any exceptionally dangerous employment; but if he voluntarily engages in it he should not complain because it is dangerous. Nevertheless, where one has entered upon the employment, and assumed the incidental risks, it is not reasonable to hold that other risks which he is directed by the master to assume are to be left to rest upon his shoulders merely because he did not take upon himself the responsibility of throwing up the employment instead of obeying the order. Many considerations might reasonably induce the servant to hesitate under such circumstances. In many cases the consequences might be very serious should he refuse to obey a lawful command of the master; and any command may not be clearly and manifestly unlawful which directs the doing of nothing beyond the general scope of the business. The servant who refused to obey must consequently expect to take upon himself the burden of showing a sufficient cause for the refusal. However clear the case might be, it is not easy to make a showing satisfactory

to third parties who would naturally assume that the order was given in good faith, and that the. master understood better than another the risks to be encountered in his business. The servant also, it may reasonably be assumed, would to some extent have his fears allayed by the commands of the master, whose duty it would be not to send him into danger, and who might therefore be supposed to know, when he gave the command that the dangers were not such, or so great as the servant had apprehended.''

These cases, from which quotations have been taken, are but a few among the many sustaining the qualification to the general rule. The point does not seem to have been heretofore presented to this court for consideration; at least, our attention is called to no case on the subject. It has, however, previously arisen in other jurisdictions, and many authorities will be found referred to in the cases from which we have taken the foregoing excerpts, which support the qualification, and to these may be added: *Illinois Steel Co.* v. *Schymamowski,* 162 Ill. 447, [44 N. E. 876]; *Patterson* v. *Pittsburg etc. Ry. Co.,* 76 Pa. St. 389;[1] *Hawley* v. *Northern Cent. Ry. Co.,* 82 N. Y. 370; *McFarlan Carriage Co.* v. *Potter,* 153 Ind. 107, [53 N. E. 465]; *Schultz* v. *Pabst Brewing Co.,* 57 Minn. 303, [59 N. W. 188]; *Hough* v. *Railway Co.,* 100 U. S. 213; *Conroy* v. *Vulcan Iron Works,* 62 Mo. 35; *Boyd* v. *Blumenthal,* 3 Penne. (Del.) 564, [52 Atl. 330]; *Barney* v. *Clark,* 112 Fed. Rep. 921; *Rice* v. *Eureka Paper Co.,* 174 N. Y. 385,[2] [66 N. E. 979].

Applying these principles of law to the case at bar (unless the other points made. by defendants are tenable), it is clear that by ordering the plaintiff to proceed more rapidly with the work by feeding a board every revolution, upon a promise that the defect in the machine would be remedied within a given time, the defendants assumed the risk of any injury to the plaintiff which might accrue while so operating it in its defective condition with ordinary care and caution, unless the danger to be incurred therefrom was so glaringly obvious that no prudent man would have undertaken it even under · the direction and promise of the defendants. On this latter proposition it was for the jury to determine whether the defect was of such a character that no man of ordinary

[1] 18 Am. Rep. 412.          [2] 95 Am. St. Rep. 585.

prudence and intelligence would have operated the machine as defendants directed.

It cannot be said, as matter of law, that plaintiff's knowledge of the defect was conclusive evidence of negligence on his part. It was not only necessary for the defendants to show (because the burden of proof was on them to show contributory negligence) that plaintiff had knowledge of the defect, but also that in obeying the order of defendants to operate the machine more rapidly in order to push the work ahead, even under the assurance that it would work all right notwithstanding the defect, the plaintiff appreciated and understood that he was incurring an obvious peril which no prudent man would hazard. Whether there was such obvious peril arising from the defect, and whether the plaintiff understood or appreciated its existence was a question which, under the circumstances of the case, was properly left to the jury, and their finding upon the subject in favor of plaintiff is conclusive.

We will now take up the other points made by appellant, addressed to the matter of the promise to repair.

It is insisted that this promise was too indefinite and contingent to relieve plaintiff from the assumption of risk; that the promise was to repair at an indefinite future time when sufficient boards were stamped to keep the box-makers busy, while said repairs were being made. But in taking a reasonable view of the promise it must be presumed (as was said in *McFarlan Carriage Co.* v. *Potter,* 153 Ind. 113, [53 N. E. 465]), that both parties knew the time necessary, and that the promise was made and acted upon with special reference to the time required. In the case at bar the accident happened on the same day that the promise was made, and while the plaintiff was operating the machine in an endeavor to keep up with the box-makers, as ordered by the defendants. It is well settled that when the injury occurs within the time at which the defect was promised to be repaired, the employer is liable. (*McFarlan Carriage Co.* v. *Potter,* 153 Ind. 113, [53 N. E. 465]; *Eureka Paper Co.* v. *Bass,* 81 Ala. 200,[1] [8 South. 216]; *Rice* v. *Eureka Paper Co.,* 174 N. Y. 385,[2] [66 N. E. 981]; *Hough* v. *Railway Co.,* 100 U. S. 213; *Greene* v. *Minneapolis and St. L. Ry. Co.,* 31 Minn. 248,[3] [17 N. W. 378];

[1] 60 Am. Rep. 152.               [3] 47 Am. Rep. 785.
[2] 95 Am. St. Rep. 585.

*Roux* v. *Blodgett etc. Co.,* 85 Mich. 519,[1] [48 N. W. 1092];
*Barney etc. Co.* v. *Clark,* 112 Fed. 921; *Westville Coal Co.* v.
*Wood,* 96 Ill. App. 616; and cases referred to in these authori-
ties.)

As to defendants' contention that the complaint was not
made, nor the promise given, by reason of any fear on the
part of plaintiff of any increased danger in the use of the
defective machine, and that plaintiff was not induced to
remain in defendants' employ by the promise to repair.
While it is true that the plaintiff does not testify explicitly
to that effect, yet these facts may be fairly inferable from his
testimony, and the jury to whom was committed the determin-
ation of that question of fact were warranted in so finding.
In Labatt on Master and Servant, section 421, it is said:
"When complaining of defective instrumentalities or ma-
chinery, it is not necessary that the servant shall state in
exact words that he apprehends danger to himself by reason
of the defects, nor need there be a formal notification that he
will leave the service unless the defects be remedied or re-
paired. It is sufficient if, from the circumstances of the case,
it can be fairly inferred that the servant is complaining on his
own account, and that he was induced to continue in the
service by reason of the promise." In *Rothenberger* v. *North-
western Con. Milling Co.,* 57 Minn. 461, [59 N. W. 531], the
court uses this language: "It is true, that the plaintiff when
complaining of the gearing into which his hand was afterward
drawn, did not notify defendants' head millwright or fore-
man that unless covering were put upon the exposed and
dangerous machinery he should quit defendants' employ, nor
did he say in so many words that he apprehended danger to
himself; but positive assertions and statements of this char-
acter are not absolutely necessary. According to the best
considered cases the real question to be determined is, whether
under the circumstances, as they appear in each case, the
master had a right to believe, and did believe, that the servant
intended to waive his objection to the defect of which he has
complained. This is a question of fact, not of law, and con-
sequently for the jury, at least if not entirely free from
doubt." (*Manufacturing Co.* v. *Morrisy,* 40 Ohio St. 148.[2])

On the point that the additional risk in the use of the
machine because of the alleged defect was occasioned by the

_____
[1] 24 Am. St. Rep. 102.          [2] 48 Am. Rep. 669.

unauthorized and improper use of the machine by plaintiff, and the further point that the defect was of a kind easily repaired, requiring no mechanical skill, and therefore that the promise to repair did not apply, but little comment is necessary. As to the manner in which plaintiff was using the machine, whatever the law might be under other circumstances, we are satisfied that in the case at bar the circumstances are such that the appellants are precluded from raising the point. The evidence in the case shows that the defendants knew of the defect, and knew that an employee of theirs had previously worked the press in exactly the same manner plaintiff was working it when the defendant George Seropian came up. The latter saw the plaintiff was operating it with the automatic feed clamped down, and his attention was called to the defect in the screw, which prevented its being used otherwise. With this knowledge and observation of the method by which plaintiff was operating it, he assured plaintiff it would be "all right' to so work it, and "to go ahead," with the promise to remedy the defect later. Under these circumstances it does not lie in the mouth of appellants to say that plaintiff's manner of operating this machine, of which they had knowledge, which they ordered him to continue to operate, in the manner he was doing, and which they assured him could be done with safety and security, was either unauthorized or improper.

As to the point that the defect was easily repaired, and required no mechanical skill to do so.

The position of appellants in this point is, that as to defects attendant upon the ordinary operation of machinery—the loosening of bolts, wearing of screws, dulling of knives and kindred matters—defects which occur in the daily operating of machinery and consequent upon its use, and which are not of a permanent character and require no mechanical skill to remedy, that it is the duty of the employee to remedy them, and that this duty was cast upon the plaintiff as to the defective screw. But we do not perceive the relevancy of this point when considered with relation to the promise of defendants and the order given by them to plaintiff, and what we have said concerning appellants' claim of the improper use of the machinery would seem to apply here. In any event, the rule contended for has application only when proper and

suitable materials are furnished and at hand to remedy these ordinary defects. The evidence in the case at bar shows that when plaintiff discovered the defect in the screw, he sent a young man to get one, and himself made similar search without being able to find one; he asked the foreman to get one, but he failed to supply it; he called the attention of defendant George Seropian to the defective screw, but he made no suggestion as to where plaintiff could obtain one, only assuring him that the machine could be operated without it, and, in addition to this, it is quite clear from other evidence in the case that the kind of screw required was not in stock in the city of Fresno.

It is clear from these facts that if the rule had any application in the case at bar, it was the fault of the defendand and not that of plaintiff that the latter did not comply with it.

This disposes of the five points above mentioned, which, however, are not the only ones urged for reversal.

It is claimed that it is neither alleged nor proved that the alleged defect was the direct or proximate cause of the injury. There is nothing in this point. The complaint sets forth facts showing negligence on the part of defendants by reason of said defect. Whether the defect was the proximate cause of the injury or not was a question of fact to be determined by the jury, and there was sufficient evidence in the case to support their finding that it was.

Two instructions given by the court—numbered 11 and 12 —are complained of. It is unnecessary to set them forth. The points made are, that in the first the court instructed the jury on a matter of fact, and in both of them instructed the jury in effect that plaintiff might recover whether the defect was, or was not, the proximate cause of the injury. There is no merit in the first point, which assumes that the court in the first instruction complained of stated to the jury, as a fact, that the condition of the machine was defective. The reference by the court at the end of the instruction to "defects" in the machine clearly had relation to the "alleged defects," as the term was properly employed by the court in previous parts of the instruction, and it cannot be reasonably said, when the instruction is examined, that the court was using it or that the jury understood it in any other way. Upon the

other point as to both instructions. In considering the validity of objections to particular instructions, the instructions must be considered as a whole, and, so considered, if it appears therefrom that the jury were fairly and fully instructed on all the law applicable to the facts in the case, the judgment will not be reversed simply because the particular instructions, taken alone, may not have embodied all the law applicable. It has been repeatedly said by this court that the lower court cannot be required to state all the law applicable to a case in a single instruction. A reading of all the instructions given in the case at bar together shows that the jury were repeatedly instructed, plainly and clearly, that in order to enable plaintiff to recover, they must find that the alleged defect was the proximate cause of the injury. The instructions taken in their entirety satisfy the general rule and leave no room for the objections which appellants raise to the particular instructions considered alone.

There was no error in refusing instruction numbered 26 asked by appellants. The use of the word "adjust" therein (and the matter of the adjustment of the machine was all that was dealt with in this instruction) was misleading and improper. To "adjust" is to "place in order." The important matter before the jury was that the machine was out of order and defective and not adjusted. The instruction, however, assumed that plaintiff adjusted the machine, then states that it was his duty to do so, and ends by submitting to the jury whether he could have done so or not. Besides, the instruction asked for a verdict in favor of defendant on matters pertaining to the adjustment alone of the machine, ignoring entirely any consideration of the promise of defendants, and other important facts in the case.

There is one point made as to the admission of evidence. Over objection of appellants the court allowed in evidence a glass jar containing the amputated hand preserved in some fluid. While it was admitted by appellants during the trial and before the offer that the hand had been amputated, it was claimed by them that it had been caught at the edge of the roller on the press and not in that portion containing the stencil. The preserved hand, however, showed a streak of ink along it, and was admissible as tending to show that it had, in fact, passed under the stencil.

There are no other points in the case properly presented to us for consideration, and, finding no error warranting a reversal, the judgment and order are affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.